1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

ADEL HASSAN HAMAD,

CASE NO. C10-591 MJP

11

Hamad,

ORDER DENYING TRANSFER OF
CASE TO DISTRICT COURT OF
DISTRICT OF COLUMBIA

v.

12

ROBERT M. GATES, et al.,

13

Defendant.

14

15

        This comes before the Court on Defendants' motion to dismiss for lack of personal

16

jurisdiction and improper venue. (Dkt No. 68.)   Having reviewed the motion, the response (Dkt.

17

No. 72), the reply (Dkt. No. 73), and all related filings, the Court GRANTS in part and DENIES

18

in part Defendants' motion to dismiss.

19

**Background**

20

        Plaintiff Adel Hassan Hamad ("Hamad") sues twenty-two United States military and

21

civilian government officials ("Defendants") for violations of the Fifth Amendment,

22

international law and the Fourth Geneva Convention.  (Compl. ¶ 3.; ¶ 81-112.)  A citizen and

23

resident of Sudan, Hamad alleges he was a humanitarian worker who was unlawfully detained in

24

1  Pakistan, Afghanistan, and Guantanamo Bay, Cuba, from July 2002 until December 2007.  (Id. at

2  ¶ 3.)  During his five and one-half years of detention, Hamad alleges he was never charged with

3  a crime.  (Id. at ¶ 8)

4         Hamad sues Defendants in their individual capacities for compensatory and punitive

5  damages.  (Id. at ¶ 15.)  In his complaint, Hamad states "Defendants exercised command

6  responsibility over, conspired with, aided and abetted subordinates, and/or directly or indirectly

7  participated in the commission of abusive and illegal practices . . . including prolonged arbitrary

8  detention." (Id.)

9         Defendants bring this motion to dismiss based on lack of personal jurisdiction with

10  respect to all Defendants except Robert Gates.  (Dkt. No. 68.)  Defendant Gates is allegedly

11  domiciled in Washington state.  (Id. at Pg. 3, fn. 2.)  In addition, Defendants seek to dismiss

12  based on improper venue and, in the alternative, seek transfer pursuant to 28 U.S.C. § 1404(a).

13  (Id. at Pg. 3-4)

14                                        **Analysis**

15  I.      Personal Jurisdiction

16          a.   Standard

17          "[T]he burden of proof is on the plaintiff to show that jurisdiction is appropriate, but . . .

18  the plaintiff need only make a prima facie showing of jurisdictional facts" to defeat a motion to

19  dismiss.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990).  To determine whether the

20  plaintiff has met his burden as to personal jurisdiction, the Court is to consider the plaintiff's

21  pleadings and affidavits.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th

22  Cir.2004).  The allegations of the complaint must be accepted as true and any "[c]onflicts

23

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 2

1    between the parties over statements contained in affidavits must be resolved in plaintiff's favor."

2    Id.

3              b.   General Jurisdiction

4         Defendants argue the Court lacks personal jurisdiction because Hamad has not

5    established the requisite "minimum contacts" with each Defendant.  (Dkt. No. 68, Pg. 4.)

6         Where no federal law authorizes personal jurisdiction, as is the case here, the Court must

7    first examine whether the forum state's laws permit the assertion of jurisdiction over nonresident

8    defendants.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir.2008). Washington's long-arm

9    statute permits the exercise of jurisdiction to the full extent of the Due Process Clause of the U.S.

10   Constitution.  Easter v. Am. West Fin., 381 F.3d 948, 960 (9th Cir.2004) (citing RCW 4.28.185).

11        Under the Due Process Clause, a court may exercise personal jurisdiction over a

12   defendant when that defendant has "minimum contacts" with the forum state.  Helicopteros

13   Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  The requirement is necessary

14   to ensure fundamental fairness and to avoid undue burdens on a defendant in litigating in a

15   distant forum.  See, e.g., International Shoe v. Washington, 326 U.S. 310, 317-18 (1945).  When

16   defendants are federal officials sued in their individual capacity, the same personal jurisdiction

17   rules apply.  Stafford v. Briggs, 444 U.S. 527, 544 (1980).  To meet this threshold, a plaintiff

18   must allege that either the claim arises out of defendants' forum-related activities or the

19   defendant has "substantial, continuous, and systematic" contacts with the forum sufficient for

20   general jurisdiction.  Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445 (1962).

21        Hamad asserts the Court has general personal jurisdiction over at least eight of the

22   Defendants based on their contacts with Washington state.  (Dkt. No. 72-1, Pg. 19-20.)  First,

23   Hamad argues the Court has general personal jurisdiction over Defendants James T. Hill and

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 3

1    Daniel McNeill because they were officers of Fort Lewis and, therefore, residents of Washington

2    state.  (Dkt. No. 71-2, Skinner Decl., Exhibit 2.)  While Hill and McNeill are no longer stationed

3    in Washington state, the Ninth Circuit analyzes a defendant's "contacts" at the time when the

4    claim arose.  Compare Farmers Ins. Exch. V. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913

5    (9th Cir. 1990)(looking to the "contacts" existing when the claim arose) with Noonan v. Winston

6    Co., 135 F.3d 85, 95 (1st Cir. 1998)(looking to defendant's local "contacts" when the complaint

7    was filed).  Since general jurisdiction requires that courts evaluate defendant's contacts over

8    time, defendant's contacts may be measured over a period of years before the action is

9    commenced.  See Metropolitan life Ins. Co. v. Robertson-Ceco, 84 F.3d 560, 569 (2nd Cir.

10   1996).

11           Hamad's claim is that he was unlawfully seized from his Pakistan apartment in July 2002

12   and held until December 2007.  (Compl. ¶ 3.)  Defendant Hill was allegedly stationed in Fort

13   Lewis from September 1999 to August 2002 and McNeill was stationed in Fort Lewis until, at

14   the latest, 2006.  (Dkt. No. 71-2, Skinner Decl., Exhibit 2.)  While Defendants argue Hill and

15   McNeill's contacts have ended and cannot be considered continuous for purposes of general

16   personal jurisdiction, this does not preclude a finding that Hill and McNeill's contacts meet the

17   requirement for the Court to assert personal jurisdiction.  Depending on their activities while

18   stationed in Washington state, McNeill and Hill may have purposefully availed themselves of

19   this forum.  The Court declines to dismiss Defendants Hill and McNeill based on lack of

20   personal jurisdiction without a more complete record.

21           Second, Hamad contends that the Court has personal jurisdiction over six additional

22   Defendants based on a more attenuated contact--their visits to Washington state military bases.

23   Hamad's argument fails because a few visits to a state are not "continuous and systematic"

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 4

1  contacts and not enough to establish general jurisdiction.  See Omeluk v. Langsten Slip &

2  Batbyggeri, 52 F.3d 267, 270 (9th Cir. 1995)(declining to exercise general jurisdiction over a

3  company based on company's personnel making "a few visits" to Washington).  The Court lacks

4  personal jurisdiction over Defendants whose only contacts are limited to mere visits to

5  Washington state.

6       Third, Hamad argues the U.S. military maintains contacts with Washington state and

7  Defendants' supervisory positions provide the Court with general jurisdiction.  This reasoning

8  fails because it would render the minimum contacts requirement for personal jurisdiction

9  meaningless with respect to federal officials who enforce federal laws on a nationwide basis.

10  See Wag-Aero, Inc. v. United States, 837 F.Supp. 1479, 1486 (E.D. Wis. 1993).  For personal

11  jurisdiction to be based on the effects of a defendant's action in a forum, the effect must stem

12  from the activity plaintiff complains of—not defendant's general activities.  See Gilbert v.

13  DaGrossa, 756 F.2d at 1459, fn.4 (finding the "effects doctrine" not applicable when there was

14  "no evidence that the activities complained of had any effect in the state of Washington.").

15  Without a showing that Defendants' actions regarding Guantanamo detainees abroad had an

16  effect in this forum, the Court lacks personal jurisdiction over Defendants.

17       Finally, the Court has discretion to grant Hamad's request for jurisdictional discovery.

18  See Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986).

19  "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of

20  jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" Id.

21  While Defendants refer to Boschetto v. Hansing, which affirmed the trial court's denial of

22  jurisdictional discovery, the court so held in recognition of the trial court's broad discretion.  539

23  F.3d 1011, 1020 (9th Cir. 2008)("The district court's refusal to provide [jurisdictional]

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 5

1  discovery, 'will not be reversed except upon the clearest showing that denial of discovery results

2  in actual and substantial prejudice'")(quotations omitted).  Here, Hamad's request for

3  jurisdictional discovery is based on little more than conjecture with respect to the majority of

4  Defendants; however, with respect to Hill and McNeill, Hamad has made a colorable claim of

5  jurisdiction.  The Court declines to dismiss for lack of personal jurisdiction when the dates of

6  Hill and McNeill's employment and their activities in Washington state remain uncertain.

7          The Court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction over

8  all Defendants except Gates, Hill and McNeill.  The Court GRANTS Hamad's request to

9  conduct limited jurisdictional discovery with respect to Gates, Hill and McNeill.  The discovery

10  shall provide a more complete record as to whether the Court has personal jurisdiction over Hill

11  and McNeill and whether the Court should transfer the case to the Western District of

12  Washington's Tacoma division pursuant to Local Rule 5(e)(1).

13          c.   § 1391(b)(3)

14          Hamad alternatively argues the Court has personal jurisdiction over all Defendants under

15  the fall-back venue statute, 28 U.S.C. § 1391(b)(3).

16          The fall-back venue statute allows a federal question case to be heard in "a judicial

17  district in which <u>any</u> defendant can be <u>found</u>" if defendants do not reside in the same state and no

18  judicial district is available where a substantial part of the events occurred.  28 U.S.C. §

19  1391(b)(3)(emphasis added).  In using the term "found" instead of "personal jurisdiction,"

20  Hamad argues § 1391(b)(3) implicitly authorizes nationwide service, which under the Federal

21  Rules, establishes personal jurisdiction over all defendants.  <u>See</u> Fed. R. Civ. P. 4(k)(allowing a

22  Court to assert personal jurisdiction based on service of process when authorized by a federal

23  statute).

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 6

1    Hamad's arguments are misplaced.  § 1391(b)(3) does not create a new basis for personal

2  jurisdiction.  See David D. Siegel, Commentary on 1988 and 1990 Revisions of Section 1391,

3  found at 28 U.S.C.A. § 1391 ("Nothing in these venue statutes is intended to expand the personal

4  jurisdiction of federal courts."); see also Moore's Federal Practice - Civil § 110.02[d] (observing

5  defendants may successfully assert lack of personal jurisdiction when sued in a district pursuant

6  to § 1391(b)(3) but not when nationwide service statutes such as antitrust, securities fraud, and

7  RICO statutes apply).  Unlike other statutes using the term "found," § 1391(b)(3) concerns venue

8  only.  The fall-back statute does not refer to service of process at all and, therefore, cannot be

9  read broadly, or in Hamad's language "implicitly," to authorize nationwide service.

10    Because the statute does not provide for nationwide service of process, the Court cannot

11  assert personal jurisdiction over Defendants implicitly under § 1391(b)(3).

12    d.  § 1391(e)

13    Hamad's attempt to assert personal jurisdiction under § 1391(e) also fails.  § 1391(e)

14  provides for nationwide service of process and personal jurisdiction when federal officials are

15  sued in their official capacity.  Stafford v. Briggs, 444 U.S. at 543-44.  In Stafford v. Briggs, the

16  Court held federal officials sued in their individual capacity are not subject to § 1391(e).  Id. at

17  544.  The Court observed that applying § 1391(e) to federal officials sued in their individual

18  capacity "would place federal officers . . . in a very different posture in personal damages suits

19  from that of all other persons."  Id.  Therefore, § 1391(e) applies only when the relief sought is in

20  reality against the government and the government is required to pay the judgment.  Id. at 546.  It

21  does not apply when the government merely volunteers to pay the judgment.  Gilbert v.

22  DaGrossa, 756 F.2d 1455, 1460 (9th Cir. 1985).

23

24

1    In this case, Hamad sues federal officials in their individual capacity.  Regardless of

2  whether the government voluntarily decides or, in Hamad's language, "believes it is obligated"

3  to defend the case and substitutes itself under the Westfall Act, the relief sought is against the

4  individuals personally.  To the extent Hamad contends § 1391(b)(3)'s enactment ten years after

5  Stafford changed the analysis, the argument fails.  By allowing venue to lie in a district in which

6  any defendant may be found, § 1391(b)(3) did not, as Hamad argues, put federal officials in the

7  same "posture" as other defendants.  Even though a greater number of forums are now available

8  to a plaintiff under § 1391(b)(3), defendants generally are still not subject to personal jurisdiction

9  on a nationwide basis.  The Court will not read § 1391(e) to apply a different personal

10  jurisdiction standard for government officials.

11    Because Hamad sues federal officials in their individual capacity and the government is

12  not required to pay the judgment, the Court does not have personal jurisdiction over Defendants

13  under § 1391(e).

14    e.  Jurisdiction by Necessity

15    Hamad also states the "jurisdiction by necessity" doctrine applies given that Hamad could

16  not file in any single federal district to seek redress.  Alternatively, Hamad requests this Court

17  create a federal common law rule to assert personal jurisdiction.

18    To assert jurisdiction by necessity, a plaintiff must show that all defendants cannot be

19  sued in a single forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 419,

20  n. 13.  Hamad has failed to meet this burden.  Specifically, Hamad provides no explanation as to

21  why the D.D.C. could not provide a single forum for Hamad's claim.  As stated in Helicopteros,

22  jurisdiction by necessity is "a potentially far-reaching modification of existing law" and a much

23  more complete record is required.  Id.

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 8

1       The Court declines to assert personal jurisdiction based on necessity and/or create a new

2   federal common law rule when other federal courts may be available for Hamad to seek relief.

3   II.   <u>Improper Venue</u>

4       a.   <u>Standard</u>

5       This Court has the authority to dismiss an action for improper venue under Federal Rule

6   of Civil Procedure 12(b)(3). While Plaintiff has the burden of showing that venue is properly laid

7   in the district in which the suit is initiated, in the context of a Fed. R. Civ. P 12(b)(3) motion,

8   "the trial court is obliged to draw all reasonable inferences in favor of the non-moving party and

9   resolve all factual conflicts in favor of the non-moving party." <u>Murphy v. Schneider Nat., Inc.</u>,

10  349 F.3d 1133, 1224 (9th Cir.2003). When deciding a challenge to venue, the pleadings need not

11  be accepted as true, and the district court may consider facts outside of the pleadings. <u>Argueta v.</u>

12  <u>Banco Mexicano</u>, 87 F.3d 320, 324 (9th Cir.1996).

13      b.   <u>The Fall-Back Venue Statute - § 1391(b)(3)</u>

14      An action in federal court on federal question jurisdiction may be brought in the

15  following venues:  "(1) a judicial district where any defendant resides, if all defendants reside in

16  the same state; (2) a judicial district in which a substantial part of the events or omissions giving

17  rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, <u>if</u>

18  <u>there is no district in which the action may otherwise be brought</u>."  28 U.S.C. § 1391(b)

19  (emphasis added).  § 1391(b)(3) is generally referred to as the fall-back venue statute because a

20  plaintiff can only assert it when § 1391(b)(1) and (2) do not apply.  See <u>FS Photo, Inc. v.</u>

21  <u>PictureVision Inc.</u>, 48 F.Supp.2d 442, 448 (D.Del. 1999)("Subsection (b)(3) is applicable only if

22  subsection (b)(1) and (b)(2) are inapplicable . . . [T]he purpose of subsection 3 'is to create a

23

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 9

1  safety valve to ensure that venue requirements do not defeat the ability to bring suit in federal

2  court.'")(quoting H.R. Rep. No. 104-181, 104th Cong., 1st Sess. (1995)).

3        Here, Hamad relies on the fall-back venue statute because Defendants do not reside in the

4  same state and all substantial parts of the events occurred abroad.  Specifically, Hamad argues he

5  was detained in Pakistan, Afghanistan, and Cuba, therefore a substantial part of the events

6  occurred where he has no venue to seek relief.  Under the fall-back statute, Hamad's case can be

7  heard in "a judicial district where any defendant may be found," including this Court based on

8  the domicile of Defendant Robert Gates in Washington state.

9        Defendants concur that they all live in different states; however, Defendants argue a

10  substantial part of the events underlying Hamad's complaint occurred in Washington, D.C.

11  Since the military policy that allegedly authorized Hamad's detention was "obviously" set, "at

12  least in part," in the "Washington, D.C. area," Defendants argue the proper venue is in D.D.C.

13  under § 1391(b)(2) and Hamad cannot reach the fall-back statute.

14        In determining whether § 1391(b)(2) should apply, "[i]t would be error . . . to treat the

15  venue statute's 'substantial part' test as mirroring the minimum contacts test employed in

16  personal jurisdiction inquiries." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2nd Cir. 2005).

17  For venue to be proper, "significant events or omissions material to the plaintiff's claim must

18  have occurred in the district in question." Id.  The inquiry is qualitative and most courts look

19  "not to a single 'triggering event' prompting the action, but to the entire sequence of events

20  underlying the claim." Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001).  In

21  a tort action, for example, the locus of the injury may be a relevant factor.  Myers v. Bennett Law

22  Offices, 238 F.3d 1068, 1076 (9th Cir. 2001)(finding venue proper in Nevada because that is

23  where the privacy invasion occurred).

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 10

1    In considering Hamad's complaint, the Court finds no substantial part of the events

2    alleged occurred in the United States and § 1391(b)(2) does not apply.  Based on Defendants'

3    motion, it is unclear whether decisions regarding Guantanamo detainees were made in

4    Washington, D.C., abroad, or possibly Virginia, where the government has previously sought to

5    litigate cases suing military officials.  See In re Iraq & Afghanistan Detainees Litigation, 374

6    F.Supp.2d 1356 (J.P.M.L. 2005).  While Defendants list their official government positions, they

7    provide no affidavits or evidence to support their assertion that military officials "obviously" act

8    in the "Washington, D.C. area."  (Dkt. No. 73, Pg. 10.)

9    Even assuming Defendants work in Washington, D.C. and not at the Pentagon where the

10   Department of Defense is headquartered, Hamad's complaint does not target Defendants' general

11   activities in setting military policy.  Hamad alleges Defendants exercised control and are directly

12   and/or indirectly responsible for his prolonged detention "at Bagram and Guantanamo."  (Compl.

13   ¶ 15.)  Taking all reasonable inferences in favor of the non-moving party, the Court finds, to the

14   extent Defendants made decisions regarding Hamad's detention in Washington, D.C., they were

15   not sufficient to assert venue under § 1391(b)(2)'s substantial part of the events test.  The

16   "substantial part of the events" analysis is not limited to where the Defendants' actions took

17   place.  A relevant factor in a tort action for purposes of this analysis is where the injuries occur.

18   See Myers, 238 F.3d at 1076.  Because Hamad was exclusively detained abroad and Defendants

19   have failed to demonstrate a substantial part of the events alleged occurred in the capital, the

20   Court finds venue proper under the fall-back statute.

21   Neither of the cases Defendants rely on to suggest § 1391(b)(2) applies are dispositive.

22   With respect to In re Iraq & Afghanistan Detainees Litigation, the Multi-District Litigation Panel

23   consolidated four cases in the District of Connecticut, District of South Carolina, the Northern

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 11

1   District of Illinois, and the Southern District of Texas, and transferred them to D.D.C. for "the

2   convenience of the parties and witnesses and [to] promote the just and efficient conduct of this

3   litigation."  374 F.Supp.2d 1356 (J.P.M.L. 2005).  While the panel observed Washington, D.C.

4   was "particularly appropriate" given defendants were military officials, the Court made no

5   finding that a "substantial part of the events" occurred in the capital or that the original forums

6   were actually improper.  Indeed, the government in that case had been seeking venue transfer to

7   Eastern District of Virginia, not the D.D.C.  Id.

8            In Kashin v. Kent, the court likewise did not consider whether venue was improper when

9   plaintiff sued a State Department official in the Southern District of California. 457 F.3d 1033,

10  1037 (9th Cir. 2006).  Instead, Kashin held the substantive law of D.C. applied given that the

11  State Department official's actions were "inextricably bound up with [D.C.]."  Id.  Contrary to

12  Defendant's arguments, Kashin suggests a forum may be proper even when defendant's actions

13  are so bound up with D.C. as to require application of another forum's law.  To the extent

14  Defendant cites Rasul v. Myers and Al-Zahrani v. Rumsfeld as examples of Guantanamo cases

15  litigated in D.D.C., both cases were originally filed in D.D.C. under § 1391(b)(2) and the issue of

16  improper venue was not litigated.  563 F.3d 527 (D.C. Cir. 2009); 684 F.Supp.2d 103 (D.D.C.

17  2010).   The D.D.C.'s acceptance of venue under § 1391(b)(2) without challenge does not equate

18  to improper venue in this Court.

19           The Court DENIES Defendant's motion to dismiss for lack of venue for those

20  Defendants over whom the Court has personal jurisdiction.  Hamad properly asserted venue in

21  the Western District of Washington under the fall-back venue statute.

22           c.   § 1391(e)

23

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 12

1    In the alternative, Hamad seeks leave from the Court to assert venue under § 1391(e).

2    (Dkt. No. 72-1, Pg. 16.)  As discussed in Part I.C. of this analysis, § 1391(e) does not apply.

3    Because Hamad sues Defendants in their individual capacities and the Court finds venue proper

4    under § 1391(b)(3), the Court DENIES Hamad's request to amend to assert venue under §

5    1391(e).

6    III.    Venue Transfer Under 28 U.S.C. § 1404(a)

7    Defendants argue the Court should transfer the case to the D.D.C. pursuant to 28 U.S.C. §

8    1404(a).

9    In considering a § 1404(a) transfer, courts consider the convenience of parties, the

10   convenience of witnesses, and the interests of justice.  See Jones v. GNC Financing, 211 F.3d

11   495, 498-99 (9th Cir. 2000)(identifying relevant factors, including respective parties' contacts

12   with the forum).  Generally, a plaintiff's choice of forum is given significant weight.  Securities

13   Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985)("[U]nless the balance

14   of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be

15   disturbed.")  This deference, however, is less when a plaintiff does not reside in the forum or

16   operative events occurred elsewhere.  See, e.g., Tranor v. Brown, 913 F. Supp. 388, 391 (E.D.Pa.

17   1996)("[S]ince plaintiffs, non-district residents, have no connection with this district, their choice

18   of forum is not entitled to great weight"); IBM Credit Corp. v. Definitive Computer Services,

19   Inc., 1996 U.S. Dist. LEXIS 2385 (N.D. Cal. 1996) ("[O]rdinarily, where the forum lacks any

20   significant contact with the activities alleged in the complaint, plaintiff's choice of forum is

21   given considerably less weight.")

22   Here, the court has broad discretion to grant or decline a convenience transfer.  Hamad's

23   choice of forum may be given less weight because he is a resident of Sudan and his unlawful

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 13

1    detention occurred abroad.  On the other hand, Defendants have not met their burden in showing

2    a transfer to the D.D.C. would be more convenient to witnesses and in the interest of justice.  The

3    moving party bears the burden of showing a level of inconvenience requiring venue transfer.

4    Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).  Defendants

5    simply state "[i]t is reasonable to assume that many non-party witnesses are found in or near

6    Washington, D.C. . . [and] that many sources of proof are located in or near Washington, D.C."

7    (Dkt. No. 73, Pg. 11.)  Without supporting affidavits or other evidence that witnesses would be

8    inconvenienced, however, the Court cannot "assume" D.D.C. would be more convenient and

9    must recognize the plaintiff's choice in forum.    A party seeking a transfer cannot rely on vague

10   generalizations as to convenience factors.  See Heller Fin'l, Inc. v. Midwhey Powder Co., 883

11   F.2d 1286, 1293 (7th Cir. 1989)(requiring that the party identify key witnesses to be called and

12   present a generalized statement of their testimony).

13          As a final note, Defendants argue that the D.D.C. is "most familiar" with the law that will

14   apply once the United States substitutes itself as defendant.  The Court does not find this

15   persuasive as it invites the Court to speculate as whether D.C. respondeat superior law will apply

16   when, at this early stage of the litigation, Hamad's pleading asserts claims solely based on

17   federal law.  In addition, courts will not consider arguments that another district court is "more

18   familiar" with a federal law as reason to transfer.  See, e.g., Cargill Inc. v. Prudential Ins. Co. of

19   America, 920 F. Supp. 144, 148 (D.Co. 1996)("[T]he suggestion that [one federal district] is a

20   less appropriate forum for this action because it lacks the experience in ERISA matters [than] the

21   courts in this circuit is both an affront to that court and an illusion to be ignored.").

22          Because Defendants have not met their burden of showing convenience or that justice

23   requires it, the Court DENIES Defendants' motion to transfer to D.D.C.  The Court notes the

24

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 14

1   exact purpose of the fall-back venue statute is to provide a plaintiff with a federal forum when no

2   other judicial district is available.  Indeed, at least one Defendant, Gates, is allegedly domiciled

3   in Washington state.

**Conclusion**

5          For the above reasons, the Court GRANTS in part and DENIES in part Defendants'

6   motion to dismiss.  The Court GRANTS Defendants' motion to dismiss for lack of personal

7   jurisdiction with respect to all Defendants except Robert Gates, James T. Hill and Daniel

8   McNeill.  Hamad presents a colorable argument that the Court has personal jurisdiction over

9   Gates, Hill, and McNeill therefore, the Court GRANTS Hamad's request for limited

10  jurisdictional discovery with respect to these defendants.  The Court DENIES Defendants'

11  motion to dismiss for improper venue and DENIES transfer to D.D.C. based on convenience.

12         The clerk is ordered to provide copies of this order to all counsel.

13         Dated this 2nd day of November, 2010.

Marsha J. Pechman
United States District Judge

ORDER DENYING TRANSFER OF CASE TO
DISTRICT COURT OF DISTRICT OF
COLUMBIA- 15