THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
6
**AT SEATTLE**

7

8 ADEL HASSAN HAMAD                                )
                                 Plaintiff,        )
                                                   )   Civil Action No.  **2:10-cv-00591 MJP**
9 v.                                                )
                                                   )
10 ROBERT M. GATES,                                 )   **PLAINTIFF'S OPPOSITION TO**
                                 Defendant.         )   **DEFENDANTS'  MOTION TO**
                                                   )   **DISMISS FOR LACK OF SUBJECT**
11                                                  )   **MATTER JURISDICTION AND**
                                                   )   **IMPROPER VENUE**
12                                                  )
                                                   )   (Noted for September 2, 2011)
13                                                  )
                                                   )
14

15                              **I.  INTRODUCTION**

16          Adel Hamad, a fifty-three year old husband and father, was an innocent humanitarian aid

17 worker when he was unlawfully seized from his apartment in Pakistan in 2002.  Am. Compl.

18 (Dkt. 96) ¶ 2.  U.S. officials, including Defendant Gates, subjected him to torture, as well as

19 cruel, inhuman and degrading treatment ("CIDT") and held him in inhuman conditions (all

20 without any due process) at Guantanamo Bay, Cuba, until they sent him back to the Sudan in

21 December of 2007[1] without charging him with any violation of law and finding that he did not

22

---

[1] There is a typo on page 2 of the Amended Complaint, line 11, which indicates Plaintiff was returned in November
of 2007; it was actually December 2007 that he was returned home, which is accurately stated elsewhere
throughout the Complaint.  See Am. Compl. (Dkt. 96) ¶¶4, 13, 16, 79.

**Plaintiff's Opp. to Def's Motion to Dismiss**                    WILLAMETTE UNIVERSITY
**for Lack of Subject Matter Jurisdiction**                              LAW CLINIC
**2:10-cv-00591**                    PAGE 1 OF 25                     245 Winter St. SE
                                                                      Salem, OR 97301
                                                             TELEPHONE: (503) 370-6140
                                                             FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1   pose a threat to the Unites States.  *Id*. ¶¶ 3, 4, 15, 16, 79.  In fact, officials had actually cleared

2   him for return home in November of 2005, but failed to inform him or his counsel of this

3   decision for over on year and a half (*id*. ¶¶ 15) even when his counsel made inquiries (*id*.  ¶ 77),

4   and *continued* to unlawfully detain him in horrendous conditions for *another two years*.  *Id*. ¶¶

5   15, 77. This included being held for a year under the direction of Defendant Gates as Secretary

6   of Defense.  *Id*. ¶24.  Moreover, Defendant Gates knew or should have known, that many, if not

7   most of the men officials had seized and were holding were innocent.  *Id*. ¶¶ 7, 8, 80.  Moreover,

8   he knew that there was no meaningful way to determine who was an enemy combatant and who

9   was not, regarding both those taken abroad and those being held.  *Id*. ¶81.  He also knew that the

10  Combatant Status Review Tribunals (CRSTs) were horribly flawed.  *Id*.  ¶56.[2]

11       Only five to seven percent of the men held at Guantanamo Bay were actually

12  apprehended during actual military engagement or "on the battlefield;" many were taken by

13  Pakistanis and Afghans who received a bounty, or did it for reasons of revenge or retribution.  *Id*.

14  ¶82. Yet, there was no credible effort to determine whether there was any suspicion or belief –

15  let alone reasonable suspicion or belief – that the men apprehended had actually engaged in or

16  supported hostilities toward or against the United States.  *Id*. ¶82.  Many U.S. officials, including

17  Defendant Gates, knew this.  *Id*. ¶¶80-81.

18       One reason Defendant Gates and others refused to acknowledge these things publicly and

19  hold adequate hearings and release the men, was out of fear of political repercussions.  *Id*. ¶¶ 7,

20  8, 81.  By continuing to hold innocent men such as Plaintiff and subjecting them to isolation and

21  horrendous treatment, Defendant Gates, who was in charge of all military forces and responsible

22  
_____

[2] In fact, as Defendant points out, the United States has since discontinued the CRSTs.  Def.'s Mot. to Dismiss Plaintiff's Fifth Amendment Claim, Dkt. 112, at 5, n. 5.

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                    PAGE 2 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1  for overseeing detainee detention, interrogation, and conditions, and who ordered, authorized,

2  condoned, created methods and procedures for the abuses, and exercised command responsibility

3  over subordinates, and thus participated in the abuses which Plaintiff suffered (*id.* ¶24), acted

4  outside the scope of his authority and employment. This was so even though, as Defendant

5  acknowledges, the United States has repudiated torture and CIDT "in the strongest terms." Def.

6  Mot. to Dismiss, Dkt. 112 at 3, n. 2. Additionally, such acts violate Article III of the Geneva

7  Conventions, customary international law, as well as the Army Field Manual. Am. Compl., Dkt.

8  96 ¶5. Such also violate the Code of Military Justice, 10 U.S.C.A. § 801, *et seq.*, which

9  specifically sets forth the responsibilities of the Secretary of Defense to ensure that prohibitions

10 of torture and CIDT are maintained.

11       When Plaintiff was taken and held without the ability to contest what was happening to

12 him, his family became destitute due to the loss of his income and his youngest child died

13 because there was not money to provide her with medical care. *Id.* ¶ 9.

14       The United States' attempt to substitute itself for Robert Gates as the defendant in this

15 action with regard to the non-*Bivens*' claims should be denied as Plaintiff can rebut the

16 presumption, created by the certification of the Attorney General, that Defendant Gates was

17 acting "within the scope of his office or employment" in taking the actions Plaintiff alleges he

18 took with regard to Plaintiff's illegal detention and treatment as a civilian. Thus, Plaintiff should

19 be allowed to proceed with his claims under the Alien Tort Statute ("ATS").[3] At a minimum,

20 Plaintiff is entitled to discovery and/or this Court should hold an evidentiary hearing on the issue

21

22 _____

[3] Plaintiff does not sue Defendant Gates for Forced Disappearance as specified in the Sixth Claim for Relief (Am. Compl., Dkt. 96 ¶136), given that Defendant Gates was not in office at the time this violation occurred.

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**               PAGE 3 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1  of "scope of employment" before the Court rules that the certification was proper given that

2  there are factual issues in dispute.

3       If the Court determines Defendant Gates was acting within the scope of his employment

4  with regard to the events outlined in the Complaint, and the United States is allowed to substitute

5  itself, then Plaintiff seeks the right to proceed under the FTCA. Dkt. 96 ¶50.  Defendant's

6  arguments regarding failure to exhaust administrative remedies are misplaced, as Plaintiff did not

7  and has not "instituted an action" under the FTCA, but has filed a case against Defendant Gates

8  in his individual capacity under the Alien Tort Statute.  *See, generally, the Am. Compl* .   Finally,

9  the Military Commissions Act does not bar Plaintiff's claims, as the Supreme Court struck down

10  the relevant section of the MCA in *Boumediene v. Bush*, 553 U.S. 723 (2008), and in any event,

11  the provision is otherwise unconstitutional.

12               **II.  ARGUMENT AND AUTHORITIES**

13       **A.  THE SUBSITUTION OF THE UNITED STATES IS NOT PROPER, SO THE
         FTCA DOES NOT APPLY.**

14

15       The Attorney General's certification that a federal employee was acting within the scope of

16  his employment (a certification the executive official has a compelling interest to grant) does not

17  conclusively establish as correct the substitution of the United States as defendant in place of the

18  employee.  *Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 434 (1995).  Therefore, although

19  certification creates a presumption that an official acted within the scope of employment, the

20  presumption is rebuttable. *Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006). Thorough review

21  of certification is particularly necessary in cases where, as here, the government moves to

22  dismiss a plaintiff's FTCA claims as well as claims against individual officials, thereby possibly

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                    PAGE 4 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1    closing all doors to redress. *Gutierrez de Martinez,* 515 U.S. at 427 (The "impetus [on the

2    Attorney General or her designee] to certify becomes overwhelming" in cases where nothing is

3    at stake for the United States as it will suffer no liability under the FTCA.)

4         **1.  Plaintiff's Claims under the Alien Tort Statute Fall Squarely Within the Statutory Exception to the Westfall Act.**

5

6         First, the statutory exception found at 28 U.S.C. § 2679(b)(2), which exempts claims for

7    a violation of a federal statute that itself authorizes an action against the individual, applies in

8    this case.  The statute by which Congress authorized such claims is the Alien Tort Statute

9    ("ATS"), which Congress, in 1789, enacted to allow aliens to bring tort claims in federal court

10   for violations of the "law of nations."  28 U.S.C. § 1350.  The government cites *Sosa v. Alvarez-*

11   *Machain*, 542 U.S. 692 (2004) for the proposition that "the ATS is a jurisdictional statute

12   creating no new causes of action," and is thus incapable of being violated.  Dkt. 111 at 4.

13   However, the Supreme Court in fact found that the ATS authorizes causes of actions against

14   individuals violating customary international law through federal courts' application of their

15   common law powers.  *Sosa,* 542 U.S. at 712.  In other words, it was the enactment of jurisdiction

16   – at a time when courts used their common law power routinely to provide remedies – through

17   which Congress authorized such actions.  *Id.* at 724.  Thus, the ATS, through the granting of

18   jurisdiction to the federal courts, authorized such claims, given the understanding of the courts'

19   common law powers at the time.[4]  The nomenclature of 28 U.S.C. § 2679(b)(2) regarding

20   "violation of a statute" should not create a barrier to what was intended by the statute – that

21   _____

22   [4] Defendant's reliance on the Ninth Circuit case of *Alvarez-Machain v. United States*, 331 F.3d 604, 631-32 (9th Cir. 2003), *reversed on other grounds, Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), to argue Ninth Circuit precedent on this issue does not stand, because the Supreme Court in *Sosa* further clarified the ATS and its role regarding the authorization of claims through Congressional understanding.

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**       PAGE 5 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1    where Congress has authorized, by statute, liability for a wrong, the Westfall Act should not

2    apply.  Congress did so through the ATS, a statute it has not repealed or amended.

3           Moreover, when Congress passed the Westfall Act in 1988, both the prevailing case law

4    and contemporaneous congressional understanding of the ATS was that the ATS provided for a

5    substantive cause of action.  Because Congress intended to preserve all existing statutory

6    remedies when it passed the Westfall Act, 28 U.S.C. § 2679(b)(2)(B) (see below), its

7    contemporaneous understanding of the ATS is relevant to the proper construction of that section.

8    In construing the Westfall Act and in deciding whether claims under the ATS fit within its

9    exception, the Court should look to this context and congressional intent.  *Cf. Dolan v. U.S.*

10   *Postal Services,* 546 U.S. 481, 486 (2006).

11          When the Westfall Act was enacted in 1988, the prevailing case law interpreted the ATS

12   to grant both federal jurisdiction and a substantive cause of action for aliens bringing actions for

13   violations of certain international laws.  *See, e.g., In re Estate of Marcos,* 25 F. 3d 1467, 1475

14   (9th Cir. 1994); *Filartiga v. Pena-Irala,* 630 F.2d 876, 885-87 (2d Cir. 1980); *Forti v. Suarez-*

15   *Mason,* 672 F. Supp. 1531, 1540 (N.D. Cal. 1987).  Congress accepted the prevailing view, and

16   this is reflected most clearly in the legislative history of the Torture Victims Protection Act

17   (TVPA), 28 U.S.C. § 1350 stat. note 2(a), which was considered by Congress

18   contemporaneously with the Westfall Act. The 1989 House Judiciary Committee Report on the

19   TVPA made clear that Congress considered the ATS to provide a substantive cause of action,

20   stating, in relevant part, "The TVPA would establish an unambiguous and modern basis for a

21   *cause of action that has been successfully maintained under an existing law, section 1350 of the*

22   *Judiciary Act of 1789 (the Alien Tort Claims Act*."  H.R. Rep. No. 101-55, 101st Cong., 1st Sess.,

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**          PAGE 6 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1   pt. 1 at 3 (1989) (emphasis added); *see also* H.R. Rep. No. 367, 102d Cong., 1st Sess., pt. 1

2   (1991) (same).  The Senate Report echoed a similar view, stating "[t]he TVPA would establish

3   an unambiguous basis for a cause of action that has been successfully maintained under an

4   existing law, section 1350 of the title 28 . . . ."  S. Rep. No. 249, 102d Cong., 1st Sess. (1991).  In

5   interpreting a statute (here, the Westfall Act) that refers to other statutes (such as the reference to

6   "statute" in 28 U.S.C. § 2679(b)(2)(B)), the court must presume that Congress was aware of

7   existing case law and in fact should interpret the language of the Westfall Act consistent with the

8   view of the ATS at the time. *See Capital Traction Co. v. Hof,* 174 U.S. 1, 36 (1899). (noting that

9   under "a familiar canon of interpretation, heretofore applied by this court whenever [C]ongress .

10  . . has borrowed from the statutes of a state provisions which had received . . . a known and

11  settled construction before [the] enactment by [C]ongress, that construction must be deemed to

12  have been adopted by [C]ongress together with the text which it expounded, and the provisions

13  must be construed as they were understood at the time in the state"); *Molzof v. United States,* 502

14  U.S. 301, 307 (1992) (explaining that when Congress borrows terms of art, it is presumed that

15  Congress has also adopted the ideas that were originally attached to those words unless otherwise

16  instructed).

17        Thus, Plaintiff's claims would have been recognized at the time of the passage of the

18  Westfall Act to be violations of  "a statute of the United States under which such action against

19  an individual is otherwise authorized," 28 U.S.C. § 2679(b)(2)(B), and therefore fall within the

20  statutory exception to the exclusive remedy provision.

21        **2.   Defendant Gates's Acts Were Outside the Scope of his Employment.**

22        In order for the Westfall Act to apply in the present case, Defendant must prove that the

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                    PAGE 7 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1    claim is for a "negligent or wrongful act or omission," and that such act or omission occurred

2    within the scope of the federal employee's office or employment.

3              a.   **The Westfall Act does not apply to egregious violations of law such as torture and CIDT; such acts are considered outside the scope of employment for purposes of the Westfall Act.**

4

5          According to the legislative history of the Westfall Act, Congress never intended to make

6    intentional, egregious violations of international and domestic law, including torture, to be

7    subject to the Westfall Act's exclusive remedy provision. First, the House Report on the Westfall

8    Act clearly stated that "[i]f an employee is accused of egregious misconduct rather than mere

9    negligence or poor judgment, then the United States may not be substituted as a defendant, and

10   the individual employee remains liable." H.R. Rep. No. 100-700 at 5 (1988), *reprinted in* 1988

11   U.S.C.C.A.N. 5945, 5949. 134 Cong.  Rec. H4718 (June 27, 1988).

12         Moreover, torture is expressly prohibited in law, including in the United States

13   Constitution, U.S. criminal statutes, U.S. military law, and U.S. treaty obligations.  Such acts are

14   never legitimate and thus never within the scope of one's authority or employment, certainly not

15   by cabinet members and senior officers of the military, as U.S. courts, particularly the Ninth

16   Circuit, and the military itself have recognized.  *See Nuru v. Gonzalez*, 404 F.3d 1207, 1222-23

17   (9th Cir. 2005) (torture violates *jus cogens* norms and can never be authorized by a government);

18   *In re Estate of Marcos Human Rights Litig.*, (*Hilao v. Maros*), 25 F.3d 1467, 1472 (9th Cir.

19   1994)  ("[A]cts of torture, execution and disappearance were clearly outside of his authority as

20   President."); *Trajano v. Marcos*, 978 F.2d 493, 497 (9th Cir. 1992); Army Field Manual, Ch 1,

21   34-52 ("The use of force, mental torture, threats, insults, or exposure to unpleasant and inhumane

22   treatment of any kind is *prohibited by law and is neither authorized nor condoned* by the U.S.

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                    PAGE 8 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1    Government.").  The Court is bound by this Ninth Circuit precedent regarding scope of

2    employment and human rights violations.

3          Importantly, in *Doe I v. Liu Qui*, 349 F. Supp. 2d 1258, 1282, 1286 (N.D. Cal. 2004), a

4    district court in Northern California found that a Chinese official's prolonged arbitrary detention,

5    torture and other physical abuse of a detainee were outside the scope of his authority because,

6    like here, his acts went beyond what was authorized by Chinese statutory law, and thus the

7    officer was "not doing the business which the sovereign has empowered him to do." *Id.* at 1282.

8          Torture and inhuman treatment are repugnant to the law.  Yet, the government has

9    certified that the alleged conduct of Defendant Gates, which includes torture and CIDT, are

10   properly within the scope of his employment, with the aim of fully immunizing him from

11   personal liability, and moves to be substituted as the sole defendant for Plaintiff's claims under

12   the Alien Tort Statute.  Defendant's motion should be denied.

13              **b. Federal common law governs the scope-of-employment determination,
                and under that law, Defendant Gates's acts were outside the scope of his**
14              **employment.**

15         This Court should apply federal common law to determine whether Defendant Gates'

16   actions fell within the scope of his employment.  Although Plaintiff concedes that under *Kashin*

17   *v. Kent*, 457 F.3d 1033, 1037 (9th Cir. 2006), D.C. law would govern the decision the Ninth

18   Circuit did not directly consider an argument for federal common law in that case.[5]

19         Given the federal nature of Plaintiff's ATS claims, this Court should abide by the

20   principle that "[w]hen federal law is the source of the plaintiffs' claim, there is a federal interest

21   in defining the defenses to that claim, including the defense of immunity." *Ferri v. Ackerman*,

22   _____

[5] In *Kashin*, the Ninth Circuit rejected the district court's application of the Restatement on the Law (Second) of
Agency, not because the district court considered it federal common law, but because another analogous statute
relied on the Restatement, an analysis the Ninth Circuit rejected. *Kashin*, 457 F.3d at 1037-38.

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591                    PAGE 9 OF 25**

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1    444 U.S. 193, 198 n.13 (1979).  There are significant federal interests here in determining

2    whether the Defendants were acting within the scope of their employment while subjecting

3    Plaintiff to prolonged arbitrary detention, cruel, inhuman and degrading treatment, torture and

4    other alleged wrongs.  State rules on scope of employment do not take into account the basic

5    federal interests at stake in determining the scope of federal law enforcement officers'

6    employment.[6]  The federal interests include defining the breadth of the waiver of sovereign

7    immunity, delineating the extent of federal liability for law enforcement abuses, creating a

8    coherent system of accountability that provides fair remedies for victims of misconduct, and

9    managing federal law enforcement agencies according to uniform federal standards. Reliance on

10   state scope-of-employment rules laws will result in decisions lacking any coherent federal policy

11   rationale.

12           International law is a matter of federal interest, and "should not be left to divergent and

13   parochial state interpretations." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425

14   (1964).  The federal government has a strong interest in ensuring that its international obligations

15   to punish those responsible for torture, for example, are performed in a uniform manner, and that

16   the law governing the liability of federal officers under statutes is interpreted consistently.

17           In applying federal common law, the Court should look to the Restatement (Second) of

18   Agency to determine what acts are within the scope of employment.[7] See *Cmty. for Creative*

19   *Non-Violence v. Reid*, 490 U.S. 730, 740 (citing *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329

20   (1981); *Perrin v. United States*, 444 U.S. 37, 42 (1979); *Reid*, 490 U.S. 730, 740 (1989) (citing

21

22   [6] *See* Dianne Rosky, *Respondeat Inferior: Determining the United States' Liability for the Intentional Torts of
     Federal Law Enforcement Officials*, 36 U.C. DAVIS L. REV. 895, 900 (2003).
     [7] In *Kashin*, the Ninth Circuit chose not to look at the Restatement, but for different reasons.  The argument herein
     for referring to the Restatement was not considered by that court.

Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591                    PAGE 10 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1   *Kelley v. Southern Pacific Co.*, 419 U.S.318, 323-24 & n. 5 (1974); *id.* at 332 (Stewart, J.,

2   concurring in judgment)); *Ward v. Atlantic Coast Line R. Co.*, 362 U.S. 396, 400 (1960); *Baker*

3   *v. Texas & Pacific R. Co.*, 359 U.S. 227, 228 (1959); *Cilecek v. Inova Health Sys. Servs.,*115

4   F.3d 256, 260 (citing *Reid,* 490 U.S. at 740-741). *See also Nationwide Mut. Ins. Co. v. Darden*,

5   503 U.S. 318, 322-325 (1992). In this case, the Court should refer to the Restatement to

6   determine whether Defendant's conduct was within the "scope of employment."

7        The Restatement (Second) of Agency § 228 defines conduct that is within the scope of

8   employment as follows:

9   (1) Conduct of a servant is within the scope of employment if, but only if:
    (a) it is of the kind he is employed to perform;
10  (b) it occurs substantially within the authorized time and space limits;
    (c) it is actuated, at least in part, by a purpose to serve the master, *and*
11  (d) if force is intentionally used by the servant against another, the use of force is not
    unexpectable by the master.
12
    (2) Conduct of a servant is not within the scope of employment if it is different in kind from that
13  authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to
    serve the master.
14
    Restatement § 228 (emphasis added).
15
16       Comment b to Restatement §228, refers to Section §245 for the special rule which applies

     when a servant intentionally uses force against another person. The special rule states as follows:
17
     A master is subject to liability for the intended tortious harm by a servant to the person or
18   things of another by an act done in connection with the servant's employment, although
     the act was unauthorized, if the act was not unexpectable in view of the duties of the
19   servant. Restatement (Second) of Agency §245.

20       Under the Restatement, the Defendant's action cannot fall within the scope of

21  employment because the conduct performed by the Defendant fails the first prong of the

22  Restatement "within the scope of employment" test - the first prong of the test requires that the

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**              PAGE 11 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1    conduct is "of the kind he is employed to perform."  Defendant was responsible for detaining

2    Plaintiff for a prolonged arbitrary amount of time and subjecting him to cruel, inhuman and

3    degrading treatment and torture even though Plaintiff was an innocent civilian who was not

4    apprehended on the battlefield and received no due process to determine if he was in fact

5    someone conspiring to endanger our nation.  Given that many of the men held at Guantanamo

6    Bay were taken by Pakistanis and Afghans who received a bounty, or who did it for retribution

7    or revenge (Am. Compl., Dkt. 96 ¶82), Defendant Gates should have ensured adequate due

8    process before continuing to unlawfully detain Plaintiff and others like him and subjecting him to

9    CIDT and other treatment that constituted torture.  Simply put, prolonged arbitrary detention of

10   individuals Defendant knew or should have known were not enemy combatants or otherwise did

11   not pose a risk to the United States, as well as torture and CIDT of any person – especially those

12   like Plaintiff – was not the kind of conduct that Defendant was employed – or authorized - to

13   perform.   Furthermore, Defendant's subjecting Plaintiff to torture and CIDT violated clear and

14   unequivocal law and policies of the United States government, as discussed above; thus not only

15   was the conduct at issue not authorized, it should not have been expected by the government

16   either.  The government expects, certainly, that its officials – especially top officials – will have

17   the intellectual and emotional fortitude to know where conduct "crosses the line" and becomes

18   illegal and wrong.  That such officials will ultimately engage in the type of conduct Plaintiff was

19   forced to endure is not, and should not be, expected.[8]

20          Second, Plaintiff has alleged in his complaint that Defendant Gates' (and others')

21

22   ───────────────────
     [8] In addition, as mentioned above, *supra* at 10, the Ninth Circuit has explicitly and consistently stated that the
     conduct at issue here can never be considered to be inside the scope of employment. *See Nuru v. Gonzalez*, 404 F.3d
     1207, 1222-23; *In re Estate of Marcos Human Rights Litig.*, 25 F.3d 1467, 1472 (9th Cir. 1994).

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                     PAGE 12 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1   motivation with regard to the continued prolonged arbitrary detention was fear of political

2   repercussions, not for purposes of serving the master.  Am. Compl., Dkt. 96 ¶8.  At the very

3   least, Plaintiff is entitled to an evidentiary hearing and/or discovery on the issue before the Court

4   rules on the motion to substitute.

5        c.   **Even if the District of Columbia law on scope of employment applies, the**
             **Court should find that Defendant Gates acted outside the scope of his**
6             **employment.**

7        As both Defendant and the Court in *Kashin* acknowledge, the District of Columbia also

8   follows the Restatement in determining scope of employment.  Def. Mot. to Dismiss, Dkt. 111 at

9   7.  *Kashin*, 457 F. 3d at 1038.  Thus, the outcome under D.C.'s law should be no different.  In

10  fact, *Kashin*, in interpreting D.C. law in this regard, noted that cases where Defendants are

11  alleged to have violated company policy may in fact serve as a basis to reject an argument that

12  defendant acted within the scope of employment.  *Id.* at 1043 ("This is not a scope of

13  employment case where the employee . . . violated company policy).  Here, Defendant Gates, in

14  subjecting him to prolonged arbitrary detention, CIDT, and torture, *did* violate the policy of the

15  United States.

16       Defendant cites several cases from the D.C. Circuit that supports his views.  Def. Mot. to

17  Dismiss, Dkt. 111 at 8.  Those cases are not binding.  Moreover, those cases are distinguishable

18  in that none of the plaintiffs in those cases argued that the defendants exceeded the scope of their

19  employment and authority with regard to individuals like Mr. Hamad, an innocent aid worker

20  seized from his apartment in an atmosphere of revenge and bounty, who had no opportunity to

21  challenge his taking or detention.  Finally, those decisions are simply wrong to suggest that U.S.

22  officials who engage in torture, CIDT, and other violations of customary international law act

**Plaintiff's Opp. to Def's Motion to Dismiss**
**for Lack of Subject Matter Jurisdiction**
**2:10-cv-00591**          PAGE 13 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1   within the scope of their employment; the decisions are contrary to the law of this Circuit, which

2   as discussed above, holds that such acts can never be in the scope of one's employment for

3   purposes of immunity.

4          One of the problems with Defendant's position regarding scope of employment is that he

5   does not suggest where the "line" should be.  Would any act whatsoever done with the alleged

6   intent to serve a master during the course of employment – such as genocide, mutilation of a

7   person's child in front of him, slowly burning a person to death -- be a direct and expected

8   outgrowth of legitimate employment activities?  All parties would agree, Plaintiff hopes, that the

9   answer is no.  Thankfully, the line has been drawn by customary international law, and by our

10  own federal law and policies, as admitted in Defendant's brief.  Def. Mot. to Dismiss., Dkt. 111

11  at 8.  The international community and the United States has agreed that torture, CIDT, and

12  prolonged arbitrary detention of over five years in the conditions in which Mr. Hamad had to live

13  were outside the line - not inside the line - of authorized employment conduct.

14          **d.   Plaintiff is entitled to discovery and/or an evidentiary hearing.**

15          If the Court cannot resolve material facts at issue in order to make a determination

16  regarding scope of employment, and thus certification, then it should order discovery and hold an

17  evidentiary hearing on those issues of fact it seeks to resolve.  *See Kashin*, 547 F.3d at 1043

18  (noting that if the pleadings and other documents reveal an issue of material fact to the scope of

19  employment analysis, the court has the authority to hold an evidentiary hearing); *Arthur v. U.S.*,

20  45 F.2d 292, 296 (9th Cir. 1995) (When district court is reviewing certification question under …

21  Westfall Act, it must identify and resolve disputed issue of fact necessary to its decision before

22  entering its order and, in doing so, it should hold such hearings as appropriate, including an

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**          PAGE 14 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1   evidentiary hearing if necessary, and make findings necessary to bind parties by its decision and

2   enable them to appeal certification decision if they deem appeal necessary.).  This is particularly

3   vital here given the unique limitations on Plaintiff's counsel's access to information by virtue of

4   the government's exclusive possession and control of evidence regarding Guantanamo

5   operations.

6   **B.  IF THE UNITED STATES IS SUBSITITED, PLAINTIFF CAN STILL PROCEED.**

7          Plaintiff filed an administrative claim with the appropriate agency on December 3, 2009,

8   (Am. Compl., Dkt. 96 ¶50) because in order to preserve any tort claim against the United States,

9   a claim must be presented within two years of its accrual, or it is forever barred.  28 U.S.C. §

10  2401(b).  However, Plaintiff has not yet "instituted a claim against the United States" pursuant to

11  28 U.S.C. § 2675(a) (in, fact, his position is that the FTCA does not apply) but instead filed a

12  complaint under the ATS. Thus, he was not required to wait six months before filing his current

13  lawsuit given that it was not against the United States.

14         Because the United States has not yet taken any action on the claim but has had it for well

15  over 6 months,[9] Plaintiff may, *at his option*, deem the claim denied and file suit against the

16  United States in federal court, but he is not required to do so. 28 U.S.C. § 2675(a).[10]  The statute

17  of limitations for bringing a claim against the United States is six years.  28 U.S.C. § 2401(a).

18  Thus, if the Court allows the United States to substitute itself and the case proceeds under the

19  FTCA, there is no jurisdictional bar to allowing the Plaintiff to proceed under the FTCA.

20

21  [9] Plaintiff acknowledges that this fact is not in the Complaint, nor would it be.  However, had the government
    responded with a final denial, the government surely would have made mention of this, given the requirement of
22  filing within six months of receiving a denial.  28 U.S.C. § 2401(b)).

    [10] If a claim is denied in writing, a plaintiff has six months in which to file a complaint in court (28 U.S.C. 2401(b))
    but this is not the case, where, like here, there has been no denial, but only silence.

**Plaintiff's Opp. to Def's Motion to Dismiss**
**for Lack of Subject Matter Jurisdiction**
**2:10-cv-00591**

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

**1.  The United States Has Waived Its Sovereign Immunity as to Plaintiff's Claims.**

The United States has waived its immunity for certain torts by federal employees occurring within the scope of their employment under circumstances where the United States, if a private person, would be liable in accordance "with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  In such suits, "the United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

The government is incorrect when it argues that claims under the ATS – namely those brought pursuant to international law – cannot form the basis of a cognizable FTCA claim.  The government mainly argues that the "law of the place" referenced in § 1346(b) refers to local law, which is often interpreted as state law, and thus claims brought for violations of international law do not fall within the scope of the FTCA.  Def. Mot. to Dismiss, Dkt. 111 at 10 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) and *Delta Savings Bank v. United States*, 265 F.3d 1017, 1024-25 (9th Cir. 2001)).

**a.  Local Law that is U.S. Law Exists in Guantanamo Bay.**

The United States waives sovereign immunity under the FTCA for any claim for which a private person, under like circumstances, would be liable "in accordance with the law of the place where the act or omission occurred".  28 U.S.C. §1346(b), §2674.  The plain language of § 1346(b) makes no reference "state" law in particular, and given the FTCA's application in non-states, such as the District of Columbia, many courts have held that the proper interpretation is actually "local" law. *See, e.g., United States v. Olson*, 546 U.S. 43, 44 (2005); *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 510 (D.C. Cir. 2009). Still other courts

THE HONORABLE MARSHA J. PECHMAN

1    have held that it refers to both state and local law. *Williams v. United States,* 242 F.3d 169, 172-

2    73 (4th Cir. 2001) ("'[L]aw of the place,' as used in the FTCA, refers to state and local law.").

3    The cases which interpret local law as state law probably do so because it was state law that was

4    local law in those situations.[11]   That is not the situation here, as there is no "state law" at

5    Guantanamo.  But there is "local law" that is applied at the base, and that includes customary

6    international law, and federal crimes such as torture.  As the Ninth *Gherebi v. Bush*, 374 F.3d

7    727, 737 (9th Cir. 2003), stated:  "The United States exercises exclusive criminal jurisdiction

8    over all persons, citizens and aliens alike, who commit criminal offenses at the Base, pursuant to

9    Article IV of the Supplemental Agreement."

10          Thus, the Court could decide that certain federal statutes that prohibit torture, including

11   the Code of Military Justice (20 U.S.C. Chapter 47, *et seq*.), are the "local law" for purposes of

12   28 U.S.C. ¶1346(b)(1), and allow the tort claims for torture and CIDT to proceed, much as state

13   courts allow tort actions arising form crimes to occur as part of their common law.

14          Moreover, the Court should find that customary international law itself is the local law of

15   Guantanamo Bay.  Such law (as well as the Geneva Conventions) undoubtedly applies to the

16   military base, given that it is governed by United States law, and customary international law is

17   part of U.S. law.  *The Paquette Habana,* 175 U.S. 677, 700 (1900).  Nothing prevents customary

18   international law itself as being the law of the place.

19

20

21   _____

     [11] The government also suggests that international law cannot be the substantive law because it is "foreign law" and
     not local law, citing *Sosa*, 542 U.S. at 707-08 and *Spelar*, 338 U.S. at 221. Def. Mot. to Dis., Dkt. 111 at 10.

22   However, international law is not foreign law in the way Congress was concerned, as the government notes.
     Rather, it was the concern about subjecting the United States to laws of another foreign power.  Def. Mot. to Dis.,
     Dkt.111 at 10.  Thus, international law should not be equated with foreign law here.

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                    PAGE 17 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1        **b. The Court Can Also Look to the Law of the District of Columbia.**

2        In this unique situation, the Court could also look to the law of the District of Columbia

3 for purposes of this FTCA section only.  For instance, courts have taken into account the site of

4 the "primary government actor" in choosing the relevant local law. *See Hitchcock v. United*

5 *States*, 665 F.2d 354, 359-60 (D.C. Cir. 1981). The Court of Appeals in Hitchcock "analogize[d]

6 the Government … to a corporation of national scope, headquartered in Washington, with a

7 clinic under similar circumstances in [another state] …[i]mmediate supervision of [which] was

8 exercised from Washington."  *Id.*

9        Here, if the Court allows the government is allowed to substitute itself as the defendant,

10 and the action is then against the United States, the "primary government actor" is ostensibly

11 located at the Pentagon in Washington, D.C.  While the "acts or omissions" challenged in the

12 Amended Complaint occurred in several locations, including Guantanamo Bay, ultimate

13 command over Guantanamo was exercised from Washington, D.C. As such, this Court could

14 find that D.C. law is the proper "law of the place" in which to find local cause of action

15 analogs.[12]

16        Plaintiff's claims for violations of international law are analogous to tortious causes of

17 action under D.C. law for which a private person would be liable. Prolonged arbitrary detention

18 is analogous to the tort of false imprisonment, the elements of which are, in the District of

19

20 [12] The application of D.C. law here should not be confused with an improper use of the headquarters doctrine exception to the foreign country exception, discussed in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). The headquarters doctrine had allowed plaintiffs to avoid the bar on any FTCA "claim arising in a foreign country," 28

21 U.S.C. § 2680(k), by alleging that the acts leading to foreign injuries occurred in the United States. In *Sosa*, the Court rejected this doctrine by holding that the language "arising in a foreign country" referred to the location of the

22 injury, and not the negligent act. *Sosa,* 542 U.S. at 712. Plaintiff suggests D.C. law solely for the purposes of §1346(b), and not to avoid the foreign country exception; his  argument is thus not an application of the headquarters doctrine. As argued below, while Plaintiff's injuries were suffered at Guantanamo, he maintains that Guantanamo is not "foreign" territory for FTCA purposes.

**Plaintiff's Opp. to Def's Motion to Dismiss for Lack of Subject Matter Jurisdiction
2:10-cv-00591**      PAGE 18 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1 Columbia, "(1) the detention or restraint of one against his will, within boundaries fixed by the

2 defendant, and (2) the unlawfulness of the restraint." *Faniel v. Chesapeake & Potomac Tel. Co.*,

3 404 A.2d 147, 150 (D.C. App. 1979).  Plaintiff's claims of torture are analogous to the tort of

4 battery.  *Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1980) ("A battery is an

5 intentional act that causes a harmful or offensive bodily contact.") (citing Rest. (Second) of Torts

6 § 18 (1965)).  Some of Plaintiff's allegations for cruel, inhuman and degrading treatment *inter*

7 *alia*, are analogous to battery, while others are analogous to intentional infliction of emotional

8 distress and false imprisonment.

9          Finally, it should be noted that customary international law is not only federal law, but

10 also arguably state law.[13]  As such, it clearly falls within the FTCA's waiver of immunity.

11          **2.        The Foreign Country Exception Does Not Apply in This Case.**

12                  **a.   Guantanamo Bay is not a foreign country and therefore falls outside the
                       foreign country exception to the FTCA.**

13

14          "In every practical sense Guantanamo is not abroad; it is within the constant jurisdiction

15 of the United States." *Boumediene v. Bush*, 53 U.S. 723, 769 (2008).

16          The foreign country exception excludes from the scope of the FTCA any claim alleging

17 injuries "arising in a foreign country."  28 U.S.C. § 2680(k).  In defining "foreign" for FTCA

18 purposes, the Supreme Court has recognized that Congress "identified the coverage of the Act

19 with the scope of United States sovereignty."  *United States v. Spelar*, 338 U.S. 217, 220-21

20

21 [13]Many scholars advocate this view. *See* G. Edward White, *Customary International Law of Torts*, 41 Val. U. L.
Rev. 755, 08 (2006); Curtis A. Bradley & Jack L. Goldsmith, *The Current Illegitimacy of Human Rights Litigation,*
22 66 Fordham L. Rev. *319* (1997).

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**          PAGE 19 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1   (1949); *see also id.* at 219 ("By the exclusion of claims 'arising in a foreign country,' the

2   coverage of the Federal Tort Claims Act was geared to the sovereignty of the United States.").

3   Courts grappling with the issue of foreignness also frequently cite the purpose behind § 2680(k),

4   namely to "codif[y] Congress's 'unwilling[ness] to subject the United States to liabilities

5   depending upon the laws of a foreign power.'" *Sosa*, 542 U.S. at 707 (citation omitted); *see also*

6   *Spelar*, 338 U.S. at 221 ("[T]hough Congress was ready to lay aside a great portion of the

7   sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United

8   States to liabilities depending upon the laws of a foreign power.").

9       The Supreme Court recognized in *Boumediene v. Bush* that the United States exercises *de*

10  *facto* sovereignty and complete jurisdiction and control over Guantanamo Bay, stating, "As we

11  did in *Rasul,* however, we take notice of the obvious and uncontested fact that the United States,

12  by virtue of its complete jurisdiction and control over the base, maintains *de facto* sovereignty

13  over this territory."  553 U.S. at 755.   It further pointed out, "Under the terms of the 1934

14  Treaty, however, Cuba effectively has no rights as a sovereign."  *Id.* at 753. The Ninth Circuit

15  has similarly held, "[I]t is apparent that the United States exercises exclusive territorial

16  jurisdiction over Guantanamo . . . ." *Gherebi v. Bush*, 374 F.3d 727, 737 (9th Cir. 2003).

17      The United States has sovereignty over an area where United States possesses "exclusive

18  power to control and govern . . . coupled with the intention to retain it permanently."  *Pedersen*

19  *v. United States*, 191 F. Supp. 95, 100 (D. Guam 1961) (quoting *Cobb v. United States*, 191 F.2d

20  604, 608 (9th Cir., 1951)).  "[T]he United States is, for all practical purposes, answerable to no

21  other sovereign for its acts on the base."  *Id.* at 2261.  Thus, given the *Spelar* Court's explanation

22  that the foreign country exception applies to torts arising in territory "subject to the sovereignty

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**          PAGE 20 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1   of another nation," *Spelar*, 338 U.S. at 219, and given that U.S. citizens at Guantanamo Bay, for

2   all practical purposes, are not subject to the sovereignty of Cuba, Guantanamo Bay should not be

3   subsumed into this exception to the FTCA.

4         Moreover, courts have repeatedly allowed FTCA claims in cases where injuries arose in

5   areas for which sovereignty is a complex question, or where dual sovereignty exists.  *See, e.g.,*

6   *Cheromiah v. United States,*  55 F. Supp. 2d 1295, 1308 (D.N.M. 1999) (allowing an FTCA

7   claim arising on a Native American Reservation and stating, "While 'Indian tribes and the

8   federal government are dual sovereigns' … the tribes are not foreign countries under any

9   definition of the term."); *Sea Air Shuttle Corp. v. United States,* 112 F.3d 532, 537 (1st Cir.

10   1997) (allowing an FTCA claim arising in the Virgin Islands); *Taber v. Maine,*  67 F.3d 1029,

11   1033 (2d Cir. 1995) (allowing an FTCA claim arising in Guam); *Soto v. United States,* 11 F.3d

12   14, 17 (1st Cir. 1993) (allowing an FTCA claim arising in Puerto Rico).

13         Apart from this clear precedent that Guantanamo is not "foreign" to the United States, the

14   government's comparison of Guantanamo to military bases in foreign countries is misplaced.

15   Courts have long recognized that the legal status of Guantanamo, particularly with respect to its

16   jurisdictional relationship to the continental United States, is unique.  *Boumediene*, 553 U.S. at

17   771 (noting that cases emerging from Guantanamo "lack any precise historical parallel.");

18   *Gherebi v. Bush*, 374 F.3d at 738 ("[W]e view Guantanamo as unique … because the United

19   States' territorial relationship with the Base is without parallel today."); *United States v. Gatlin,*

20   216 F.3d 207, 214 n.8 (2nd Cir. 2000) ("[W]e stressed in *McNary* that the 'status of the territory'

21   is 'unique.'") (citing *Haitian Ctrs. Council, Inc. v. McNary,* 969 F.2d 1326, 1340 (2d Cir. 1992)).

22   The determination of whether § 2680(k) covers claims arising in Guantanamo should therefore

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**                     PAGE 21 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1  be determined by reference to the Supreme Court holdings in *Boumediene* and *Rasul*, as well as

2  the well-recognized interpretation of the foreign country exception as applied to the unique

3  circumstances surrounding Guantanamo.

4  **C. VENUE IN THE WESTERN DISTRICT OF WASHINGTON IS PROPER.**

5        **1.    The Court Should Use Its Judicial Discretion to Apply the Pendent Venue
6               Doctrine and Allow the FTCA Claims to Remain Before This Court.**

7        The doctrine of pendant venue allows a court to find venue where the pendent claim(s)

8  arise from the same nucleus of operative facts as other properly venued federal claims.  32A Am.

9  Jur. 2d Federal Courts § 1145.  This doctrine is an exception to the rule that venue must be

10  established for each cause of action filed in the complaint.  *Id.; see also Dolly Toy Co. v.*

11  *Bankcroft-Rellim Corp.,* 97 F.Supp. 531, 536 (S.D.N.Y. 1951); *Ferguson v. Ford Motor Co.*, 77

12  F.Supp. 425, 436 (S.D.N.Y. 1948).  In the current case, Plaintiff has properly filed claims where

13  the Western District of Washington is proper venue, including the *Bivens* claims.  Since the

14  *Bivens* claims may proceed within the Western District of Washington even if the Court agrees

15  to the substitution of the United States for the claims brought under the ATS, the Court may

16  apply the pendent venue doctrine to keep the claims together in the interest of judicial efficiency.

17  Since the facts and evidence supporting each type of claim are so intertwined, it would be

18  inefficient to transfer or dismiss the FTCA claims due to venue alone.

19        **2.    In the Alternative, the Court Should Use Its Common Law Power to Decide
20               Venue in a Location in the United States.**

21        In the alternative, the Court should use its common law power to authorize venue in this

22  case due to the extraordinary circumstances.  A federal court can develop federal common law

**Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
2:10-cv-00591**        PAGE 22 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

1   on an interstitial basis, to fill in gaps of federal law where appropriate.  *See Sosa v. Alvarez-*

2   *Machain*, 542 U.S. 692, 726 (2004) ("Elsewhere, this Court has thought it was in order to create

3   federal common law rules in interstitial areas of particular federal interest"), (citing *United States*

4   *v. Kimbell Foods, Inc.,* 440 U.S. 715, 726-727 (1979)).  The Court should develop a common

5   law rule that would allow it to authorize venue in this case for FTCA litigation, given its unique

6   circumstances.  Clearly, there is a gap in federal law with respect to available venue for claims

7   converted from ATS claims to FTCA claims where, as here, the alleged acts and injuries

8   occurred in an area of U.S. sovereignty, but where there is not a court.  The Court could use its

9   common law power and allow the FTCA claims to remain here in the Western District of

10  Washington.  Alternatively, the Court could use its power to transfer the FTCA case to the

11  nearest federal court to Guantanamo Bay, ostensibly in the Southern District of Florida.

12  **D.  THE MILITARY COMMISSIONS ACT OF 2006 DOES NOT PRECLUDE THIS**
    **COURT FROM HEARING PLAINTIFF'S CLAIM.**
13

14          The MCA does not strip this Court of jurisdiction to hear Plaintiff's claim because 1) the

15  Supreme Court in *Boumediene v. Bush* invalidated Section 7 of the Act (codified at 28 U.S.C. §

16  2241(e)) in its entirety – not just the habeas section; 2) even if the section survived *Boumediene*,

17  it is unconstitutional under Article III of the Constitution, because it violates the doctrine of

18  separation of powers and the Fifth Amendment; 3) the provision is an unconstitutional bill of

19  attainder, and 4) Plaintiff was not properly determined to be an enemy combatant with requisite

20  due process, and thus the provision does not apply to him.  Plaintiff incorporates the first section

21  of his simultaneously-filed Opposition to Defendant's Motion to Dismiss Plaintiff's Fifth

22  Amendment Claims herein, which discusses in detail why the MCA does not preclude the court

**Plaintiff's Opp. to Def's Motion to Dismiss**
**for Lack of Subject Matter Jurisdiction**
**2:10-cv-00591**                    PAGE 23 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1   from hearing Plaintiff's Claim.

2                              **CONCLUSION**

3          For the foregoing reasons, the Defendants motion to dismiss and motion to substitute

4   should be denied.

5          Respectfully submitted this 29th day of August, 2011.

6

7   WILLAMETTE UNIVERSITY SCHOOL OF LAW
    INTERNATIONAL HUMAN RIGHTS CLINIC
8

9          /s/ GWYNNE L. SKINNER
    Gwynne L. Skinner, OSB No. 022235
10  Attorney for Plaintiff

11

    PUBLIC INTEREST LAW GROUP, PLLC
12  705 Second Avenue, Suite 1000
    Seattle, WA  98104
13  (206) 838-1800

14  /s/  Hank Balson
    Hank Balson, WSBA No. 29250
15  Nancy S. Chupp, WSBA No. 33740
    Attorneys for Plaintiff

16

17

18

19

20

21

22

**Plaintiff's Opp. to Def's Motion to Dismiss**
**for Lack of Subject Matter Jurisdiction**
**2:10-cv-00591**          PAGE 24 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433

THE HONORABLE MARSHA J. PECHMAN

1          **CERTIFICATE OF SERVICE**

2          I hereby certify that on August 29, 2011, I electronically filed the foregoing with the

3   Clerk of Court using the CM/ECF system, which will send notification of this filing, and a copy

4   of the brief, to:

5

6   Paul E. Werner
    Trial Attorney
7   United States Department of Justice
    Torts Branch, Civil Division
8   P.O Box 7146
    Ben Franklin Station
9   Washington, D.C. 20044

10

          /s/ GWYNNE L. SKINNER
11   Gwynne L. Skinner, OSB No. 022235
     Attorney for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

Plaintiff's Opp. to Def's Motion to Dismiss
for Lack of Subject Matter Jurisdiction
**2:10-cv-00591**          PAGE 25 OF 25

WILLAMETTE UNIVERSITY
LAW CLINIC
245 Winter St. SE
Salem, OR 97301
TELEPHONE: (503) 370-6140
FACSIMILE: (503) 375-5433