The Honorable Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADEL HASSAN HAMAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. C10-0591MJP |
| | ) |
| ROBERT M. GATES, in his individual capacity, | ) **UNITED STATES' REPLY IN** |
| | ) **SUPPORT OF ITS MOTION TO** |
| and | ) **DISMISS FOR LACK OF SUBJECT** |
| | ) **MATTER JURISDICTION AND** |
| UNITED STATES OF AMERICA, | ) **IMPROPER VENUE** |
| | ) |
| Defendants. | ) (Note on Motion Calendar for: |
| | ) September 2, 2011) |

The United States demonstrated in its motion to dismiss that Plaintiff's customary international law and Geneva Convention claims are covered by the *Westfall* Act, 28 U.S.C. § 2679(b), and that former Secretary of Defense Robert M. Gates acted within the scope of his employment under applicable state law. We further demonstrated that the resulting claims under the Federal Tort Claims Act must be dismissed because Plaintiff had failed to exhaust his administrative remedies, the foreign country exception barred those claims, the United States had not waived its immunity for such claims, the Military Commissions Act barred the claims, and venue was improper. Plaintiff's response fails to counter the United States' showing.

**I.    UNDER BINDING PRECEDENT, THE *WESTFALL* ACT COVERS PLAINTIFF'S ATS CLAIMS.**

Binding Ninth Circuit precedent precludes Plaintiff's argument, Dkt. No. 113 at 5-7, that the *Westfall* Act does not cover claims brought under the Alien Tort Statute, 28 U.S.C. § 1350 (ATS). *See*

1   *Alvarez-Machain v. United States*, 331 F.3d 604, 631-32 (9th Cir. 2003) (en banc), *rev'd on other*

2   *grounds sub nom. Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). In its en banc decision, the court was

3   unequivocal: "[plaintiff's] claims under the ATCA were subject to substitution under the [*Westfall*]

4   Act." *Alvarez-Machain*, 331 F.3d at 632 (internal quotation omitted). The Supreme Court in *Sosa* did not

5   address this portion of the Ninth Circuit's holding, *see* 542 U.S. 692, and therefore it remains binding

6   circuit law. Accordingly, the ATS claims fall within the ambit of the *Westfall* Act and the United States

7   is the proper defendant for those claims.

8        Nor does the *Westfall* Act contain an exception for "egregious violations of law," contrary to

9   Plaintiff's argument otherwise. *See* Dkt. No. 113 at 8-9. As an initial matter, Plaintiff's argument runs

10   directly counter to the language of the *Westfall* Act itself, which applies to any action "for injury . . .

11   arising or resulting from the negligent or wrongful act or omission" of a federal employee. 28 U.S.C.

12   § 2679(b)(1). Under this plain language, "wrongful" conduct is covered. By any definition, "egregious

13   violations of law" are "wrongful," and therefore fall within the Act. *Cf. Duffy v. United States*, 966 F.2d

14   307, 313 (7th Cir. 1992) ("We are unwilling to accept that intentional torts do not fall under the rubric of

15   wrongful acts."). Plaintiff cites no case holding otherwise.

16        Moreover, where the language of a statute is unambiguous, there is no reason to turn to

17   legislative history for guidance. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997); *Ratzlaf v. United*

18   *States*, 510 U.S. 135, 147-48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text

19   that is clear."); *see also Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1054 (9th Cir.

20   2010) (per curiam) (where language of statute is unambiguous, "reliance on the statute's legislative

21   history is misplaced"), *cert. denied*, 131 S. Ct. 2460 (2011). The term "wrongful acts" is unambiguous,

22   and therefore there is no basis for looking to the legislative record here. But even assuming certain

23   portions of that record cited by Plaintiff suggest some members of Congress may have shared Plaintiff's

24   view, Congress did not include an exception for intentional or "egregious torts," even though it clearly

25   could have. Indeed, Congress enumerated two exceptions to the *Westfall* Act, which forecloses any

26   argument that Congress intended there to be a third "implied" exception. *See TRW v. Andrews*, 534 U.S.

27   19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition,

28   additional exceptions are not to be implied, in the absence of a contrary legislative intent."). In effect,

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 2
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1  Plaintiff asks this Court to infer an additional exception to the *Westfall* Act, which, as we already

2  explained, Dkt. No. 111 at 4, it cannot do. *See United States v. Smith*, 499 U.S. 160, 167 (1991)

3  ("Congress' express creation of these two exceptions [to the *Westfall* Act] convinces us that the Ninth

4  Circuit erred in inferring a third exception."). In sum, Plaintiff's ATS claims are covered by the *Westfall*

5  Act, which does not contain an implied "egregious violation" exception. *See Alvarez-Machain v. United*

6  *States*, 266 F.3d 1045, 1049, 1053 (9th Cir. 2001) (affirming substitution of the United States on ATS

7  claims including torture, kidnaping, and cruel, inhuman, and degrading treatment or punishment), *aff'd*

8  *en banc*, 331 F.3d 604 (9th Cir. 2003), *rev'd on other grounds*, 542 U.S. 692 (2004); *Wilson v. Drake*,

9  87 F.3d 1073, 1076-78 (9th Cir. 1996) (substituting the United States on allegations of assault and

10  battery). *See also Ali v. Rumsfeld*, --F.3d--, 2011 WL 2462851, at *8-9 (D.C. Cir. June 21, 2011)

11  (rejecting argument that *Westfall* Act contains "egregious tort" exception and affirming substitution of

12  United States for claims of torture).

13  **II.     GATES ACTED WITHIN THE SCOPE OF EMPLOYMENT AS A MATTER OR LAW.**

14       **A. District of Columbia law governs the scope-of-employment inquiry here.** Plaintiff

15  concedes that under Ninth Circuit precedent, District of Columbia law governs whether Gates acted

16  within the scope of employment. *See* Dkt. No. 113 at 9. That the Ninth Circuit in *Kashin v. Kent*, 457

17  F.3d 1033 (9th Cir. 2006), did not "directly consider" Plaintiff's argument that "federal common law"

18  should apply here, Dkt. No. 113 at 9, does not affect the binding status of *Kashin*. Moreover, Plaintiff

19  fails to cite any cases even recognizing the existence of a federal common law for scope of

20  employment—let alone applying it in the *Westfall* substitution context.[1]

21       The Ninth Circuit cases he does cite that purportedly place torturous acts outside the scope of

22  employment are inapposite. *See* Dkt. No. 113 at 8-9. Those cases addressed whether a government

23  officer acted within the scope of his or her official *authority* while engaged in certain acts—not whether

24  such an individual acted within the scope of his or her *employment*. *See, e.g.*, *In re Estate of Marcos*

25  *Human Rights Litig.*, 25 F.3d 1467, 1472 (9th Cir. 1994) (discussing, in the context of official immunity

26

_____

27       [1]Furthermore, Plaintiff's argument that *Kashin* did not directly consider the federal common law
    approach is plain wrong. The district court in *Kashin* had applied the Restatement (Second) of Agency as

28  part of the general principles of United States law, citing the Military Claims Act as support. *See Kashin
    v. Kent*, 333 F. Supp. 2d 926, 929-30 (S.D. Cal. 2004). The Ninth Circuit rejected that approach.

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 3
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1   under the Foreign Sovereign Immunities Act, whether foreign official acted within the scope of his

2   authority); *Doe I v. Liu Qui*, 349 F. Supp. 2d 1258, 1281-85 (N.D. Cal. 2004) (same). But as the Ninth

3   Circuit has made clear, the proper inquiry in the *Westfall* substitution context is the "broader 'scope of

4   employment' test," as opposed to the "narrow 'scope of authority' test." *Pelletier v. Fed. Home Loan*

5   *Bank of S.F.*, 968 F.2d 865, 867 (9th Cir. 1992). The Ninth Circuit has determined that the "scope of

6   office or employment" included in § 2679 for substitution purposes means the same as it does under the

7   Federal Tort Claims Act's § 1346(b)—the scope of employment standard found in state *respondeat*

8   *superior* law. *See McLaughlin v. Bell*, 261 F.3d 908, 911 (9th Cir. 2011). Accordingly, the proper test

9   here is whether Gates acted within the scope of his employment under District of Columbia law.

10      **B. Gates clearly acted within the scope of his employment.** Under District of Columbia

11  precedent, there is no question that Gates acted within the scope of his employment as Secretary of

12  Defense. As a threshold matter, Plaintiff has failed to point to a single specific instance of torture or

13  mistreatment he claims to have suffered during Gates's tenure as Secretary of Defense. The only

14  allegations against Gates are that he "ultimately" was responsible for Plaintiff's last year of detention

15  and that he made a policy decision as a cabinet-level official of not releasing individuals he "knew or

16  should have known" were innocent. *See* Am. Compl. ¶¶ 7, 8, 24. This amounts to nothing more than a

17  suit against Gates based solely on his position as Secretary of Defense. It is patently illogical to argue

18  that Gates acted outside the scope of his employment with regard to his alleged failure to properly fulfill

19  duties supposedly arising directly from his federal position.

20      It is also clear that under binding District of Columbia law, Gates acted within scope. Although

21  Plaintiff correctly notes that the decisions in *Ali v. Rumsfeld*, *Rasul v. Myers*, 512 F.3d 644 (D.C. Cir.),

22  *vacated*, 129 S. Ct. 763 (2008), *reinstated in relevant part*, 563 F.3d 527 (D.C. Cir.), *cert. denied*, 130 S.

23  Ct. 1013 (2009), and *Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103 (D.D.C. 2010), *appeal docketed*, No.

24  10-5393 (D.C. Cir. Nov. 29, 2010), are not binding, they are highly persuasive because they are directly

25  on point. Moreover, those rulings were based on District of Columbia cases that *are* binding on this

26  Court. *See Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) ("When

27  interpreting state law, federal courts are bound by decisions of the state's highest court." (citing *In re*

28

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 4
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1  *Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990))); *see also Harbury v. Hayden*, 522 F.3d 413, 422 (D.C.

2  Cir. 2008) (noting that *Rasul*'s substitution holding was based on District of Columbia case law).

3       In particular, the United States in its opening brief cited two D.C. Court of Appeals cases that

4  resolve the scope inquiry here. *See* Dkt. No. 111 at 8 (citing *Weinberg v. Johnson*, 518 A.2d 985 (D.C.

5  1986), and *Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)). In *Weinberg*, the District of Columbia's

6  highest court upheld a jury verdict that a laundromat employee acted within the scope of his employment

7  when he shot a patron after an argument over some missing laundry. *See* 518 A.2d at 987. As the court

8  explained in an earlier ruling in the case, under D.C. law, "where a tort is the outgrowth of a job-related

9  controversy," the employee committing the tort is acting within scope. *Johnson v. Weinberg*, 434 A.2d

10 404, 408 (D.C. 1981) (citations omitted). And in *Howard University*, the D.C. Court of Appeals noted

11 that a university dean acted within the scope of his employment when he sexually harassed a university

12 professor at various university-related functions. *See* 484 A.2d at 987.

13      Recognizing that the above cases involved horrendous facts, the court's holdings remain binding.

14 Under *Weinberg* and *Howard University*, there is no doubt that former Defense Secretary Gates acted

15 within the scope of his employment under any reasonable construction of the vague allegations against

16 him in the complaint. Plaintiff does not—and cannot credibly—allege that Gates was on a "personal

17 adventure" when he oversaw the military and allegedly refrained from releasing detainees for fear of

18 political repercussions. *See Johnson*, 434 A.2d at 409 (citation omitted). Nor can it credibly be disputed

19 that Plaintiff's allegations against Gates here involve actions Gates undertook as an "outgrowth of a job-

20 related controversy"—namely, the United States military's apprehension and detention abroad of foreign

21 nationals during the government's pursuit of al Qaeda and its affiliates. In short, under District of

22 Columbia law, Gates acted within scope and the United States properly substituted itself.

23      **C. Neither an evidentiary hearing nor discovery is warranted.** The Ninth Circuit holds that a

24 district court should not conduct an evidentiary hearing on scope of employment under the *Westfall* Act

25 "if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal

26 an issue of material fact." *Kashin*, 457 F.3d at 1043 (quoting *Gutierrez de Martinez v. Drug Enforcement*

27 *Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997)). There is no issue of material fact here. As explained

28

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 5
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1    above, even assuming the truth of Plaintiff's allegations against Gates, he was acting within the scope of

2    his employment as a matter of law. Therefore, an evidentiary hearing is inappropriate.[2]

3         Similarly, other circuits have held that a plaintiff is not entitled to discovery where the complaint

4    and other documents present no issue of material fact regarding scope of employment. As the D.C.

5    Circuit held in a legally indistinguishable case, "discovery is not warranted if the plaintiff did not allege

6    any facts in his complaint or in any subsequent filing . . . that, if true, would demonstrate that [the

7    defendant] has been acting outside the scope of his employment." *Rasul*, 512 F.3d at 662 (citation and

8    internal quotation omitted). Along those lines, the Third Circuit stated: "Permitting additional discovery

9    when the Attorney General's certification is not based on a different understanding of the facts than is

10   reflected in [a plaintiff's] complaint would undermine the intent of the Westfall Act to protect federal

11   employees from responding to state law tort claims." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir.

12   2000), *cert. denied*, 532 U.S. 958 (2001). *See also Singleton v. United States*, 277 F.3d 864, 871 (6th

13   Cir. 2002) (quoting *Brumfield*); *Gutierrez de Martinez*, 111 F.3d at 1155 (Fourth Circuit upholding

14   lower court's refusal to allow scope discovery where material facts relating to scope of employment

15   were not in dispute); *Forrest City Mach. Works, Inc. v. United States*, 953 F.2d 1086, 1088 (8th Cir.

16   1992) (holding that, when plaintiffs present no specific evidence contradicting a scope-of-employment

17   certification, discovery before dismissal is unnecessary). And to the extent Plaintiff suggests he should

18   be allowed to pursue discovery because it might reveal facts showing Gates acted outside of scope, Dkt.

19   No. 113 at 15, such an endeavor would be "nothing more than a fishing expedition for facts that *might*

20   give rise to a viable scope-of-employment claim." *Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir.

21   2009) (reversing district court's order of scope discovery where the allegations, accepted as true,

22   demonstrated that defendant acted within scope). *Cf. Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal.*,

23   98 F.3d 1102, 1106 (9th Cir. 1996) (noting in the habeas context that "courts should not allow prisoners

24   to use federal discovery for fishing expeditions to investigate mere speculation"). In light of the above

25   case law, and the absence of any material dispute here, this Court should deny Plaintiff's request.

26

27

28
    _____

    [2]Notably, Plaintiff fails to identify any issues of material fact in his opposition.

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 6
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

## II.   SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS.

**A. Plaintiff has failed to exhaust his administrative remedies.** Plaintiff's argument, Dkt. No. 113 at 15, that he did not have to file a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (FTCA), is meritless. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Plaintiff is not released from this obligation simply because he filed his claims as ATS claims against government officials. *See, e.g.*, *Rasul*, 512 F.3d at 660-61 (dismissing for failure to exhaust administrative remedies ATS claims converted into FTCA claims under the *Westfall* Act). Because the United States was properly substituted, Plaintiff must comply with the FTCA's administrative exhaustion requirement, which he has not done. *See Henderson v. United States*, 785 F.2d 121, 124-25 (4th Cir. 1986) (where federal official sued individually, approving procedure of certifying scope of employment, substituting the United States, and moving to dismiss for failure to exhaust administrative remedies).

**B. The foreign country exception, 28 U.S.C. § 2680(k), bars Plaintiff's claims.** Plaintiff concedes that the exclusion of claims under the FTCA that arise in a foreign country is "geared to the sovereignty of the United States." Dkt. No. 113 at 20 (quoting *United States v. Spelar*, 338 U.S. 217, 219 (1949)). Under that well-established principle, courts uniformly have dismissed FTCA claims arising in Guantánamo Bay. *See Al-Zahrani*, 684 F. Supp. 2d at 117-19 (dismissing FTCA claims by former Guantánamo Bay detainees under foreign country exception); *Bird v. United States*, 923 F. Supp. 338, 343 (D. Conn. 1996) (dismissing medical malpractice claims arising in Guantánamo Bay under foreign country exception).

Plaintiff's intimation, Dkt. No. 113 at 20-21, that Guantánamo Bay is actually under the sovereignty of the United States is contrary to explicit Supreme Court precedent. *See Boumediene v. Bush*, 553 U.S. 723, 754 (2008) ("We therefore do not question the Government's position that Cuba, not the United States, maintains sovereignty, in the legal and technical sense of the term, over Guantanamo Bay.").

Moreover, the Ninth Circuit recognizes additional factors that indicate a location is in a foreign country for FTCA purposes. In *Meredith v. United States*, 330 F.2d 9 (9th Cir. 1964), the court noted

1   that the "absence of United States courts" in a location, "with resulting problems of venue, and the

2   difficulty of bringing defense witnesses from the scene of the alleged tort to places far removed," all

3   indicate that an area is a foreign country. *Id.* at 10 (quoting *Burna v. United States*, 240 F.2d 720, 722

4   (4th Cir. 1957)). Each one of the factors identified in *Meredith* applies to Guantánamo Bay.

5       In this regard, the cases Plaintiff cites allowing FTCA claims arising in United States territories

6   or on Native American reservations to proceed are inapposite. First, United States sovereignty extends to

7   the Virgin Islands, Guam, and Puerto Rico, which are United States territories. Second, each one of

8   those territories has a federal courthouse. And third, Native American tribes are not foreign countries

9   "under any definition of the term," as stated in the case Plaintiff cites. *Cheromiah v. United States*, 55 F.

10  Supp. 2d 1295, 1308 (D.N.M. 1999) (citing *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 72, 82

11  (1962)). Accordingly, Plaintiff's claims are barred by the foreign country exception to the FTCA.

12      **C. The United States has not waived its immunity for international law claims.** As aptly

13  explained by the district court in *Bansal v. Russ*, 513 F. Supp. 2d 264, 280 (E.D. Pa. 2007), "the United

14  States has not waived its sovereign immunity with respect to [international law] claims," and Plaintiff

15  has cited no cases basing an FTCA claim on customary international law. Plaintiff's argument that

16  customary international law norms are incorporated into federal law as "local law" at Guantánamo Bay,

17  Dkt. No. 113 at 16-17, is of no moment here. The Supreme Court has "consistently held that § 1346(b)'s

18  reference to the 'law of the place' means law of the State—the source of substantive liability under the

19  FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). In other words, regardless of whether a particular

20  international norm operates as federal law in a particular context, to hold the United States liable under

21  the FTCA a plaintiff must identify a duty that "arise[s] from *state* statutory or decisional law," and not

22  from some other source. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001)

23  (emphasis added). It is well-established that "[v]iolations of federal law—when not accompanied by any

24  local law violation—cannot support a suit under the FTCA," *Hornbeck Offshore Transp., LLC v. United

25  States*, 569 F.3d 506, 508 (D.C. Cir. 2009); to permit otherwise would be to permit "an 'end around' the

26  local law requirements of the FTCA." *Delta Savings*, 265 F.3d at 1026. That this might create some

27  anomaly in that federal law instead of "local law" might govern at the U.S. Naval Base at Guantánamo

28  Bay speaks more to the fact that the FTCA was never intended to extend the waiver of sovereign

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 8
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1   immunity to conduct occurring in foreign countries. *See Smith v. United States*, 507 U.S. 197, 202-03

2   (1993); *see also Al-Zahrani*, 684 F. Supp. 2d at 117-19; *Bird*, 923 F. Supp. at 339-43.[3]

3       **D. 28 U.S.C. § 2241(e)(2) bars Plaintiff's claims.** For the reasons presented in the United

4   States' opening motion, 28 U.S.C. § 2241(e)(2) bars Plaintiff's claims. *See* Dkt. No. 111 at 13-14.

5   Plaintiff misses the mark when he argues, Dkt. No. 113 at 23-24, that this statute is somehow

6   unconstitutional. The FTCA is a limited statutory waiver of sovereign immunity, designed by Congress.

7   The authority of Congress to *withdraw* subject-matter jurisdiction for claims under that limited waiver is

8   beyond doubt. In any event, Plaintiff's constitutional challenges to § 2241(e)(2) are without merit, as

9   explained in detail in Defendant Gates's reply. *See* Def. Gates's Reply at 6-11.

10  **III.    VENUE IS IMPROPER.**

11      Plaintiff implicitly concedes that venue is improper for his FTCA claims. *See* Dkt. 113 at 22-23.

12  His argument for "pendent venue," *id.*, is unavailing. First, such an argument necessarily relies on the

13  existence of another claim for which venue is proper—here, his constitutional claim against Gates. But

14  that claim must be dismissed, as explained in Gates's filings. *See* Dkt. No. 112; Def. Gates's Reply.

15  Accordingly, no claim exists to provide an anchor for venue for Plaintiff's FTCA claims.[4]

16      Moreover, the FTCA context—which presents a limited statutory waiver of sovereign

17  immunity—creates "a strong negative presumption against courts finding discretionary pendent venue"

18  in a place other than where Congress allowed. *Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir.

19  1984) (internal citations omitted), *overruled on other grounds by Kauffman v. Anglo-Am. Sch. of Sofia*,

20  28 F.3d 1223 (D.C. Cir. 1994). *Cf. Balt. & O.R. Co. v. Kepner*, 314 U.S. 44, 54 (1941) ("A privilege of

21  venue granted by the legislative body which created the right of action cannot be frustrated for reasons of

22  convenience or expense."). Although Plaintiff correctly notes that—as a general matter—federal courts

23

24      [3]Plaintiff's argument that D.C. law applies at Guantánamo, Dkt. No. 113 at 18, because the "ultimate

25  command over Guantánamo was exercised from Washington, D.C.," finds no support in the case law
    and is, moreover, difficult to square with Plaintiff's prior statement that "[t]he Complaint does not allege

26  that any acts, let alone any substantial events giving rise to the claim, occurred in the District of
    Columbia." Dkt. No. 71, Pl.'s Opp'n to Mot. to Dismiss or Transfer, at 1.

27      [4]Furthermore, where a plaintiff raises both FTCA and *Bivens* claims, the interest of justice is best

28  served by transferring such cases to a district where venue is proper for all the claims—here, the District
    of Columbia. *See Andrade v. Chojnacki*, 934 F. Supp. 817, 830-31 & n.28 (S.D. Tex. 1996).

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 9
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

may create common-law rules where appropriate, the FTCA context is certainly not one where this principle applies. *See Smith*, 507 U.S. at 203 (admonishing courts to "not take it upon [themselves] to extend the [FTCA] waiver beyond that which Congress intended"). And to the extent there are any supposed "gaps" in venue for FTCA claims originating in places like Guantánamo Bay, such "gaps" speak far more to the unavailability of such claims than to the need to create venue where none exists. *See Smith*, 507 U.S. at 202 (holding that Antartica is a foreign country under the FTCA in part because no venue would lie for claims arising there if the plaintiff did not reside in the United States).

## CONCLUSION

For the reasons stated above and those in the United States' motion to dismiss, this Court should dismiss Plaintiff's ATS claims against the United States.

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 10
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1   DATED this 2nd day of September, 2011.

2

3                                                 Respectfully submitted,

4   JENNY A. DURKAN                               TONY WEST
    United States Attorney                        Assistant Attorney General, Civil Division
5   Western District of Washington
                                                  TIMOTHY P. GARREN
6                                                 Acting Deputy Assistant Attorney General

7                                                 C. SALVATORE D'ALESSIO
                                                  Acting Director, Torts Branch
8
                                                  ANDREA W. McCARTHY
9                                                 Senior Trial Counsel

10                                                LAURA K. SMITH
                                                  Trial Attorney
11
                                                  s/ Paul E. Werner
12                                                PAUL E. WERNER
                                                  MD Bar (conditionally admitted, W.D. Wash.)
13                                                Trial Attorney
                                                  United States Department of Justice
14                                                Torts Branch, Civil Division
                                                  P.O. Box 7146
15                                                Ben Franklin Station
                                                  Washington, D.C. 20044
16                                                (202) 616-4152 (phone)
                                                  (202) 616-4314 (fax)
17                                                E-mail: Paul.Werner@usdoj.gov

18                                                Attorneys for Defendant Robert M. Gates and the
                                                  United States

19

20

21

22

23

24

25

26

27

28

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 11
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

# CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to:

Gwynne L. Skinner
Willamette University School of Law
Clinical Law Program
245 Winter Street, SE
Salem, OR 97301

Hank Balson
Nancy S. Chupp
Public Interest Law Group, PLLC
705 Second Avenue, Suite 1000
Seattle, WA 98104

/s/ Paul E. Werner
PAUL E. WERNER
MD Bar (conditionally admitted, W.D. Wash.)
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS - 12
(C10-0591MJP)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152