1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

The Honorable Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADEL HASSAN HAMAD,                       )
                                          )
                          Plaintiff,      )   NO. C10-0591MJP
                                          )
                v.                        )   **DEFENDANT ROBERT GATES'S**
                                          )   **REPLY IN SUPPORT OF HIS**
ROBERT M. GATES, in his individual capacity, )  **MOTION TO DISMISS PLAINTIFF'S**
                                          )   **FIFTH AMENDMENT CLAIM**
        and                               )
                                          )   (Note on Motion Calendar for:
UNITED STATES OF AMERICA,                 )          September 2, 2011)
                                          )
                          Defendants.     )
                                          )

17

18

19

20

21

        In his opening brief, Defendant Robert M. Gates demonstrated that the Military Commissions
Act bars Plaintiff's claim, as do special factors, and that in any event, he is entitled to qualified immunity
because Plaintiff failed to allege Gates personally participated in any clearly established constitutional
violations. In his opposition, Plaintiff fails adequately to grapple with any of these reasons for why his
complaint against Gates must be dismissed.

22

### I.     SPECIAL FACTORS BAR CLAIMS IN THIS CONTEXT.

23

24

25

26

27

28

        In his motion to dismiss, Gates demonstrated—by citing to extensive case law—that this Court
should not infer a common-law *Bivens* damages remedy in this context. *See* Dkt. No. 112 at 6-17. In
response, Plaintiff fails to cite a *single case* in which a court allowed an implied damages remedy to
proceed in the context presented here: the apprehension and detention of an alien by the United States
military outside of the United States during the course of an ongoing armed conflict. Indeed, numerous

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1   cases have rejected on special factors grounds *Bivens* claims in precisely this context—cases that are

2   legally indistinguishable from Plaintiff's claim. *See Ali v. Rumsfeld*, –F.3d–, 2011 WL 2462851, at \*6-7

3   (D.C. Cir. June 21, 2011); *Rasul v. Myers*, 563 F.3d 527, 532 n.5 (D.C. Cir.), *cert. denied*, 130 S. Ct.

4   1013 (2009); *Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103, 112 (D.D.C. 2010), *appeal docketed*, No.

5   10-5393 (D.C. Cir. Nov. 29, 2010).

6         Nor does Plaintiff dispute that over the last thirty years, the Supreme Court has "consistently

7   refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp.*

8   *v. Malesko*, 534 U.S. 61, 68 (2001). *See also* Dkt. No. 112 at 10-11 (citing cases). The Ninth Circuit has

9   clearly recognized this development in the case law: "The Court has focused increased scrutiny on

10  whether Congress intended the courts to devise a new *Bivens* remedy, and in every decision since

11  *Carlson*, across a variety of factual and legal contexts, the answer has been 'no.'" *Western Radio Servs.*

12  *Co. v. U.S. Forest Service*, 578 F.3d 1116, 1119 (9th Cir. 2009) (citations omitted), *cert. denied*, 130 S.

13  Ct. 2402 (2010). There is no question that Plaintiff invites this Court to merely ignore the clear

14  admonitions in *Malesko* and *Western Radio* and to "extend *Bivens* liability" into a wholly new and novel

15  context.

16        And there is no question that the context is not merely new and novel: it is also extremely

17  sensitive, involving fundamental separation of powers concerns. It cannot reasonably be argued that the

18  apprehension and detention abroad of foreign nationals by the United States military during the

19  government's pursuit of al Qaeda and its affiliates does not directly implicate matters of national

20  security, military effectiveness, and foreign affairs. Courts have repeatedly held that these matters are

21  special factors and have therefore refused to infer a *Bivens* remedy in such contexts. *See, e.g., United*

22  *States v. Stanley*, 483 U.S. 669, 683-84 (1987); *Chappell v. Wallace*, 462 U.S. 296, 301-04 (1983); *Ali*,

23  2011 WL 2462851, at \*6-7; *Arar v. Ashcroft*, 585 F.3d 559, 574-75 (2d Cir. 2009) (en banc), *cert.*

24  *denied*, 130 S. Ct. 3409 (2010); *Rasul*, 563 F.3d at 532 n.5; *Sanchez-Espinoza v. Reagan*, 770 F.2d 202,

25  209 (D.C. Cir. 1985). This Court should follow this extensive case law and should refuse Plaintiff's

26  invitation to create a new common-law remedy here.

27        Lastly, Plaintiff fails to wrestle with Gates's showing that congressional failure to create the

28  remedy he seeks has not been inadvertent and therefore counsels against inferring a *Bivens* remedy. *See*

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 2

1   Dkt. No. 112 at 15-17. *See also Western Radio*, 578 F.3d at 1120 ("So long as Congress' failure to

2   provide money damages, or other significant relief, has not been inadvertent, courts should defer to its

3   judgment." (quoting *Berry v. Hollander*, 925 F.2d 311, 314 (9th Cir. 1991))). The fact that Congress has

4   not seen fit to afford a damages remedy does not alter the special factors analysis—just the opposite, it is

5   an additional reason this Court should not infer a claim. As the Court explained in *Schweiker v. Chilicky*,

6   487 U.S. 412 (1988), Congress's failure to provide a remedy for a constitutional violation is not an

7   invitation for courts to do so: "The absence of statutory relief for a constitutional violation . . . does not

8   by any means necessarily imply that courts should award money damages against the officers responsible

9   for the violation." *Id.* at 421. *See also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (noting that a *Bivens*

10  remedy is "not an automatic entitlement no matter what other means there may be to vindicate a

11  protected interest"); *Stanley*, 483 U.S. at 683 ("[I]t is irrelevant to a 'special factors' analysis whether the

12  laws currently on the books afford [plaintiff] . . . an 'adequate' federal remedy for injuries."). In this

13  respect, Plaintiff misses the mark when he argues that several of the cases Gates cites involved "some

14  alternative scheme" and therefore are distinguishable. *See* Dkt. No. 114 at 16. Additionally, although a

15  damages remedy against individual officers or the United States does not exist here, other remedies are

16  present. First, there are prosecutorial remedies for criminal violations. And second, Congress has

17  provided a mechanism for persons held by the United States military claiming injury to seek monetary

18  redress, albeit through a discretionary administrative claim process. *See* Military Claims Act, 10 U.S.C.

19  § 2733; Foreign Claims Act, 10 U.S.C. § 2734.

20          In sum, the vast weight of case law demonstrates that a common-law *Bivens* remedy is not

21  appropriate in this context. Plaintiff has failed to counter this showing. This Court should therefore

22  dismiss his constitutional claim.

23  **II.      QUALIFIED IMMUNITY WARRANTS IMMEDIATE DISMISSAL.**

24          **A. Plaintiff has failed to allege Gates personally participated in any alleged abuses.** It is

25  important to reiterate that the only period at issue in Plaintiff's complaint as to the sole remaining

26  Defendant, former Secretary of Defense Gates, is the last year of Plaintiff's detention at Guantánamo

27  Bay. *See* Dkt. No. 112 at 19. Plaintiff has failed to point to a single specific instance of torture or

28  mistreatment he claims to have suffered during that limited period—let alone any abuse authorized or

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 3

1   approved by Gates. The only alleged involvement of Gates is his "ultimate[]" responsibility for

2   Plaintiff's additional year of detention while Gates served as Secretary of Defense, *see* Am. Compl. ¶ 24,

3   which amounts to nothing more than a suit against Gates based solely on the position he held in the

4   federal government, and not on his actions.

5         Such distant and limited involvement simply cannot show personal participation. As the Court

6   made clear in *Ashcroft v. Iqbal*, "each Government official, *his or her title notwithstanding*, is only liable

7   for his or her own misconduct." 129 S. Ct. 1937, 1949 (2009) (emphasis added). Moreover, "bare

8   assertions" that a high-ranking government official "knew of" and "condoned" an individual's subjection

9   to some allegedly unconstitutional policy of which the official was the "principal architect," or was

10  "instrumental" to, do not suffice to meet basic pleading requirements. *Id.* at 1951 (quoting the *Iqbal*

11  plaintiff's complaint).

12        Plaintiff's allegations against Gates are no different than those in *Iqbal*. He alleges in conclusory

13  fashion that Gates "knew or should have known" Plaintiff was innocent, Am. Compl. ¶ 7, and charges

14  Gates with the "bare assertions" of "ordering, authorizing, condoning, creating methods and procedures

15  for" the abuses Plaintiff claims he suffered. *Id.* ¶ 24. Plaintiff also argues in his opposition that Gates

16  "committed, directed and ordered the acts about which" he complains. Dkt. No. 114 at 21 (citing Am.

17  Compl. ¶¶ 5, 18, 24). However, in none of the cited portions of the complaint does Plaintiff provide facts

18  to support such "bare assertions." Under *Iqbal*, these precise types of allegations were determined to

19  carry no weight. *See* 129 S. Ct. at 1951. As such, Plaintiff has failed to plead that Gates personally

20  participated in any of the alleged abuses here.

21        **B. Plaintiff has failed to allege facts showing a clearly established constitutional violation.**

22  In the event this Court deems it necessary to reach the issue of qualified immunity, it should dismiss

23  Plaintiff's claim on the second prong of qualified immunity alone because there is no dispute that

24  Plaintiff's constitutional claim was not clearly established at the relevant time; it is not necessary or

25  appropriate to decide the underlying constitutional question. As Gates explained in his motion to

26  dismiss, the controlling case law during the relevant period—2003-07—made evident that aliens outside

27  the United States had no clearly established due process rights. *See* Dkt. No. 112 at 23-24 (citing cases).

28  And among the numerous cases Gates cited were those addressing aliens at Guantánamo Bay and

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 4

1   holding that such aliens did not have Fifth Amendment rights. *See Cuban Am. Bar Ass'n v. Christopher*,

2   43 F.3d 1412, 1428 (11th Cir. 1995) (holding that Cuban and Haitian migrants held at Guantánamo Bay

3   had "no First Amendment or Fifth Amendment rights"); *see also Al Odah v. United States*, 321 F.3d

4   1134, 1140-1144 (D.C. Cir. 2003) (similarly holding that aliens held at Guantánamo Bay did not have

5   substantive due process rights), *rev'd on other grounds sub nom. Rasul v. Bush*, 542 U.S. 466 (2004).

6   Even after *Boumediene v. Bush*, 553 U.S. 723 (2008), it is precedent in the D.C. Circuit that aliens

7   detained at Guantánamo are not entitled to due process rights. *See Kiyemba v. Obama*, 555 F.3d 1022,

8   1026, 1032 (D.C. Cir. 2009), *vacated and remanded*, 130 S. Ct. 1235, *reinstated*, 605 F.3d 1046 (D.C.

9   Cir. 2010), *cert. denied*, 131 S. Ct. 1631 (2011). Plaintiff's contention, Dkt. No. 114 at 22-23, that Gates

10  should have known that the United States exercised "territorial jurisdiction" over Guantánamo fails even

11  to cite, let alone discuss or attempt to distinguish, any of the above cases.[1]

12      As such, it cannot logically be argued that Plaintiff had clearly established due process rights in

13  2007. As the Supreme Court recently stated, for a constitutional right to be clearly established, "existing

14  precedent must have placed the . . . constitutional question *beyond debate*." *Ashcroft v. Al-Kidd*, 131 S.

15  Ct. 2074, 2083 (2011) (emphasis added and citations omitted). Given the "existing precedent," there can

16  be no question that Gates is entitled to qualified immunity because Plaintiff had no clearly established

17  due process rights at the time.

18      As to the broader question of whether the Fifth Amendment should now be construed to extend

19  to aliens detained at Guantánamo Bay, recent Supreme Court precedent on appropriate qualified

20  immunity analysis eliminates any doubt that such a far-reaching and important constitutional question

21  should not be decided in a context like this, where Plaintiff's claim is separately and independently

22  barred by qualified immunity, special factors, and statutory defenses. *See* Dkt. No. 112 at 22-23. *See also*

23  *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011) ("[O]ur usual adjudicatory rules suggest that a court

24  *should* forebear resolving [the constitutional] issue."); *Pearson v. Callahan*, 129 S. Ct. 808, 820 (2009)

25

26

27      [1]And Plaintiff's argument, Dkt. No. 114 at 24, that Gates violated clearly established United States laws and treaties is of no moment. Officials sued for violating the constitution "do not forfeit their immunity by violating some other statute or regulation." *Davis v. Scherer*, 468 U.S. 183, 194 n.12

28  (1984).

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 5

1    (indicating that where a court can "rather quickly and easily decide" a claim on clearly established

2    grounds, it should do so). Plaintiff has not argued otherwise.

3    **III.    28 U.S.C. § 2241(e)(2) WITHDRAWS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S DAMAGES CLAIM.**

4

5    As discussed in the initial motion, Dkt. No. 112 at 4-6, the plain terms of 28 U.S.C. § 2241(e)(2)

     foreclose jurisdiction over Plaintiff's claim for damages. Because Plaintiff's claim for money damages

6    would fail on the ground that a *Bivens* remedy is foreclosed here on special factors and qualified

7    immunity grounds, this Court need not address Plaintiff's contention that the withdrawal of subject-

8    matter jurisdiction in 28 U.S.C. § 2241(e)(2) is unconstitutional. *See Schweiker*, 487 U.S. at 429 n.3

9    (Court declined to decide availability of federal-question jurisdiction where it held "on other grounds

10   that a *Bivens* remedy is precluded in this case"); *see also Arar*, 585 F.3d at 571 ("In any event, we need

11   not decide the vexed question of whether the INA bar defeats jurisdiction of Arar's substantive due

12   process claims, because we conclude below that the case must be dismissed at the threshold for other

13   reasons."); *Al-Zahrani*, 684 F. Supp. 2d at 111-12 (declining to address whether § 2241(e)(2) is

14   unconstitutional because former Guantánamo detainees' claims foreclosed on special factors and

15   qualified immunity grounds).

16   In any event, Plaintiff's constitutional challenge lacks merit. Indeed, that challenge is based upon

17   the incorrect assumption that a constitutional right to a money damages remedy exists in this context.

18   Money damage claims are, however, often barred by common law or statutory immunities. *See Hui v.*

19   *Castaneda*, 130 S.Ct. 1845, 1852 (2010). For example, damages claims are barred against judges and

20   prosecutors acting within their respective functions. *See Imbler v. Pachtman*, 424 U.S. 409, 423-24

21   (1976). Constitutional money damages claims are also barred against other officials if the constitutional

22   right and violation at issue were not clearly established at the time. *See Harlow v. Fitzgerald*, 457 U.S.

23   800, 817-18 (1982). There is also immunity from common-law tort claims under the *Westfall* Act, 28

24   U.S.C. § 2679(b). Moreover, as discussed at length above, *Bivens* damages claims are barred where there

25   are "special factors" counseling hesitation. As the Supreme Court recently explained in *Wilkie v.*

26   *Robbins*, a *Bivens* money damages remedy "is not an automatic entitlement no matter what other means

27

28

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 6

1   there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy

2   unjustified." 551 U.S. at 550.

3          Furthermore, as the Court unanimously held in *Castaneda*, Congress may bar a *Bivens* remedy

4   whenever it deems appropriate. 130 S. Ct. at 1851-52. Thus, Plaintiff's premise that there is a

5   constitutional right to a damages remedy here is without merit. Moreover, as discussed below, Plaintiff's

6   challenges fail in their own right.

7          **A.** ***Boumediene*** **did not strike down § 2241(e)(2).** As explained, Dkt. No. 112 at 5, 28 U.S.C.

8   § 2241(e)(2) removes this Court's subject-matter jurisdiction over Plaintiff's damages claim regarding

9   the conditions of his military confinement. Contrary to Plaintiff's contention, Dkt. No. 114 at 4-5,

10  *Boumediene* did not invalidate § 2241(e)(2). To be sure, both 28 U.S.C. § 2241(e)(1) (the bar on habeas

11  claims at issue in *Boumediene*) and § 2241(e)(2) (the bar on "other" non-habeas actions at issue here)

12  were enacted as parts of § 7 of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat.

13  2636 ("2006 MCA"). But *Boumediene* discussed only the § 7 provision addressing habeas claims,

14  invalidating it with respect to the Guantánamo military detainees, not the distinct provision addressing

15  conditions-of-confinement claims in non-habeas actions. *See* 553 U.S. at 792 ("In view of our holding

16  we need not discuss the reach of the writ with respect to claims of unlawful conditions of treatment or

17  confinement."); *see also Al-Zahrani*, 684 F. Supp. 2d at 109. Plaintiff's claim for money damages, of

18  course, is not a habeas claim implicating the Suspension Clause. Accordingly, the courts addressing the

19  issue have uniformly held that § 2241(e)(2) remains intact, even after *Boumediene* struck down the

20  habeas-removing portion of the 2006 MCA as applied to the Guantánamo detainees then before the

21  Court. *See Khadr v. Bush*, 587 F. Supp. 2d 225, 235-36 (D.D.C. 2008) ("*Boumediene* invalidated only

22  section 2241(e)(1), but not section 2241(e)(2)."); *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp.

23  2d 312, 314 (D.D.C. 2008) ("Cognizant of the long-standing rule of severability, this Court, therefore,

24  holds that [§ 2241(e)(2)] remains valid.").

25         Plaintiff also errs in contending, Dkt. No. 114 at 5-6, that § 2241(e)(2) cannot be severed from

26  § 2241(e)(1). Given the presumption favoring severability, *Regan v. Time, Inc.*, 468 U.S. 641, 653

27  (1984), the proper question is whether Congress would have preferred what is left of the statute to no

28  statute at all. *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 330 (2006). Congress

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 7

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1   recognized that detainee litigation was consuming enormous resources and disrupting the operation of

2   the Guantánamo Bay Naval Base—and it found particularly troubling the prospect of protracted

3   conditions-of-confinement claims against individual military personnel. *See, e.g.*, 153 Cong. Rec.

4   S2867-68 (Mar. 8, 2007) (Sen. Graham) (congressional action was necessary because the detainees "are

5   suing our own troops for medical malpractice, for DVD access, for better exercise . . . [which] has

6   clogged our courts and . . . impeded the ability to run this jail"). The correct inference is that Congress

7   would have preferred that conditions-of-confinement claims continue to be limited even if the limitation

8   on habeas actions was set aside.

9          **B. Section 2241(e)(2) is a valid exercise of Congress's authority over jurisdiction.** Because

10   Plaintiff here seeks only monetary damages for alleged conduct in the past prior to his transfer from

11   Guantánamo Bay, *see, e.g.*, Am. Compl. ¶¶ 146-47, he raises solely an as-applied challenge to

12   § 2241(e)(2). For Plaintiff, the statute functions as a straightforward legislative restriction on the

13   availability of money damages.

14          Congress has the authority to determine the general types of relief the courts may award on

15   various federal-law claims. *See, e.g.*, *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress

16   has the constitutional authority to define the jurisdiction of the lower federal courts."). "In providing

17   remedies . . . the Congress is acting within its delegated power over the jurisdiction of the federal courts

18   which the Congress is authorized to establish . . . . In dealing with methods within its sphere of remedial

19   action the Congress may create and improve as well as abolish or restrict." *Aetna Life Ins. Co. v.

20   Haworth*, 300 U.S. 227, 240 (1937). Thus, Congress has the authority to "abolish or restrict" monetary

21   remedies. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83-84 (1978).

22   Similarly, the courts of appeals have upheld the constitutionality of the congressional power to deny

23   money damages awards to categories of litigants, such as prisoners subject to the Prison Litigation

24   Reform Act of 1995 (PLRA). *See Davis v. District of Columbia*, 158 F.3d 1342, 1345-48 (D.C. Cir.

25   1998); *Zehner v. Trigg*, 133 F.3d 459, 461-64 (7th Cir. 1997); *see also Harris v. Garner*, 190 F.3d 1279,

26   1287-90 (11th Cir. 1999), *reinstated by* 216 F.3d 970, 972 (11th Cir. 2000) (en banc). The principle that

27   Congress can "abolish or restrict" monetary remedies applies in the *Bivens* context at issue here. The

28   *Bivens* remedy flows from federal-question jurisdiction that is, of course, conferred by Congress, *see,*

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

1    *e.g.*, *Bush v. Lucas*, 462 U.S. 367, 378 (1983), and litigants have no "automatic entitlement" to a

2    judicially-devised action for money damages. *Wilkie*, 551 U.S. at 550. Congress may thus remove a

3    *Bivens* damages remedy in a particular class of cases by modifying the federal-question jurisdiction

4    conferred in 28 U.S.C. § 1331, given that litigants do "not [have] a damages remedy for every legal

5    wrong," *Nixon v. Fitzgerald*, 457 U.S. 731, 754 n.37 (1982).

6        Contrary to Plaintiff's contention, Dkt. No. 114 at 7, dismissal of his damages claim would not

7    implicate the Supreme Court's observation—in a case where the respondent had sought prospective and

8    declaratory relief but "no monetary damages"—that a "serious constitutional question . . . would arise if

9    a federal statute were construed to deny *any* judicial forum for a colorable constitutional claim." *Webster*

10   *v. Doe*, 486 U.S. 592, 597, 603 (1988) (internal quotation marks omitted; emphasis added). The *Webster*

11   presumption is not implicated here because Plaintiff does not seek prospective relief. *Webster* did not

12   purport to address the validity of withdrawing jurisdiction over monetary damages claims such as

13   Plaintiff's; whether "any judicial forum" may be "den[ied]" for a claim for prospective relief says

14   nothing about the permissibility of denying monetary damages on a claim. Further, Plaintiff cannot

15   hypothesize or imagine various scenarios not before this Court, including a scenario concerning

16   prospective relief, to support his claim that § 2241(e)(2) is unconstitutional. *See Wash. State Grange v.*

17   *Wash. State Repub. Party*, 552 U.S. 442, 449 (2008).

18       Plaintiff also errs in contending, Dkt. No. 114 at 9, that applying § 2241(e)(2) would contravene

19   the separation of powers principles associated with *United States v. Klein*, 80 U.S. (13 Wall.) 128

20   (1872). *Klein* relied on a combination of factors to hold a congressional enactment unconstitutional,

21   including the fact that Congress had assured a favorable result for the government in all cases by

22   requiring courts to make conclusive presumptions regardless of evidence to the contrary, and had

23   infringed upon the President's pardon power. *See United States v. Sioux Nation*, 448 U.S. 371, 404-05

24   (1980). Those unique factors are absent here. Moreover, even assuming that *Klein* retains some force in

25   situations that do not involve either of the two factors mentioned above, *Klein* does not apply when

26   Congress "amend[s] applicable law," *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995), and a

27   statutory amendment that withdraws subject-matter jurisdiction over a claim or modifies the available

28   relief is an amendment of applicable law. *See Lindh v. Murphy*, 96 F.3d 856, 872 (7th Cir. 1996) (en

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1  banc) (*Klein*-based challenge failed because "Congress cannot tell courts how to decide a particular case,

2  but it may make rules that affect classes of cases" and "[r]egulating relief is a far cry from limiting the

3  interpretive power of the courts"), *rev'd on other grounds*, 521 U.S. 320 (1997).

4  　　　**C. Section 2241(e)(2) is not an impermissible bill of attainder.** Plaintiff is next mistaken in

5  arguing, Dkt. No. 114 at 9-12, that application of § 2241(e)(2) would contravene the Constitution's ban

6  on attainders, Art. I, § 9, cl. 3, because, even assuming Plaintiff has a right under the Bill of Attainder

7  Clause, the statute does not contain either of the required elements of a bill of attainder: it neither singles

8  out Plaintiff nor imposes punishment. *See Selective Serv. Sys. v. Minn. PIRG*, 468 U.S. 841, 846-47

9  (1984) (bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an

10  identifiable individual without provision of the protections of a judicial trial"). Rather, § 2241(e)(2) is a

11  nonpunitive jurisdictional statute. *See Kiyemba v. Obama*, 605 F.3d 1046, 1048 (D.C. Cir. 2010); *Nagac*

12  *v. Derwinski*, 933 F.2d 990, 991 (Fed. Cir. 1991).

13  　　　Plaintiff errs in contending, Dkt. No. 114 at 12, that the statute should nevertheless be deemed

14  punitive because Congress had a "desire to punish" military detainees. The statute was enacted to

15  prevent aliens designated as "enemy combatants" from maintaining conditions-of-confinement suits in

16  court, including claims seeking money damages against individual military personnel and civilian

17  officials who oversee the military. That purpose was plainly legitimate, given that the Constitution vests

18  Congress with broad authority to regulate the armed forces. *See* U.S. Const. Art. I, § 8, cls. 11-14.

19  Reinforcing Congress's concern was the anticipated pressure that detainees' suits seeking damages based

20  on conditions of confinement would place on government personnel. *See* 153 Cong. Rec. S2867-68

21  (Mar. 8, 2007) (Sen. Graham); 152 Cong. Rec. S10,403 (daily ed. Sept. 28, 2006) (Sen. Cornyn) (stating

22  that the U.S. military "should not be punished with litigation" for detaining an alien who is later

23  released); 152 Cong. Rec. H7536 (Rep. Saxton) (Sept. 27, 2006) (stressing need "to protect our

24  American troops and agents" from suits). Section 2241(e)(2) thus had a valid, non-punitive purpose, and

25  is no bill of attainder. *See Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1,

26  83 (1961) ("only the clearest proof could suffice to establish the unconstitutionality of a statute" as a bill

27  of attainder).

28

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 10

1    **D. Applying § 2241(e)(2) complies with any applicable due process requirements.** Dismissal

2    of Plaintiff's damages claim under § 2241(e)(2) would not contravene the Due Process Clause of the

3    Fifth Amendment—assuming *arguendo* such rights apply here. Section 2241(e)(2)'s withdrawal of

4    subject-matter jurisdiction has not impinged on a constitutionally-protected property interest. As

5    discussed above, a *Bivens* claim is "not an automatic entitlement." *Wilkie*, 551 U.S. at 550. Thus, for due

6    process purposes, § 2241(e)(2) interferes with no cognizable property interest in a *Bivens* claim.

7    Moreover, even if Plaintiff had such a property interest, Congress's decision to limit conditions-of-

8    confinement claims was not "without due process" because in this context, "the legislative determination

9    provides all the process that is due." *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982).

10    Plaintiff also errs in contending, Dkt. No. 114 at 12-14, that he was not properly determined to be

11    an enemy combatant due to alleged deficiencies in the Combatant Status Review Tribunal (CSRT)

12    process. The Department of Defense established the CSRT procedures using as a baseline the procedures

13    described by the Supreme Court plurality in *Hamdi v. Rumsfeld*, 542 U.S. 507, 538 (2004)—procedures

14    the plurality deemed adequate for a United States citizen under the Due Process Clause and described as

15    "already" existing in Army Regulation 190-8. And contrary to Plaintiff's contention, Dkt. No. 114 at 13,

16    the procedures available to Plaintiff following enactment of the Detainee Treatment Act (DTA) in late

17    December 2005 included the ability to obtain review in the D.C. Circuit (DTA § 1005(e)(2)(C)(ii), 119

18    Stat. 2680, 2742), and Plaintiff actually availed himself of that avenue by filing a challenge in the D.C.

19    Circuit to his CSRT determination. *See Hamad v. Gates*, No. 07-1098 (D.C. Cir. Mar. 26, 2009). Given

20    that the CSRT and DTA review procedures exceeded the procedures provided in Army Regulation 190-

21    8, and thus the due process requirements that the *Hamdi* plurality said would be constitutionally

22    sufficient even for American citizens held in this country, the procedures were constitutionally sufficient

23    for aliens detained under the circumstances Plaintiff faced. *See, e.g.*, *Harisiades v. Shaughnessy*, 342

24    U.S. 580, 587 (1952) ("War, of course, is the most usual occasion" for distinguishing between the rights

25    of aliens and citizens). *Boumediene*, which addressed the Suspension Clause, not the Due Process

26    Clause, did not hold otherwise. *See* 553 U.S. at 784-85.

27

28

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

**CONCLUSION**

For the reasons stated above and those in his opening brief, this Court should grant Gates's

motion to dismiss and should dismiss Plaintiff's claim against him.

DATED this 2nd day of September, 2011.

|  |  |
|---|---|
|  | Respectfully submitted, |
| JENNY A. DURKAN<br>United States Attorney<br>Western District of Washington | TONY WEST<br>Assistant Attorney General, Civil Division |
|  | TIMOTHY P. GARREN<br>Acting Deputy Assistant Attorney General |
|  | C. SALVATORE D'ALESSIO<br>Acting Director, Torts Branch |
|  | ANDREA W. McCARTHY<br>Senior Trial Counsel |
|  | LAURA K. SMITH<br>Trial Attorney |
|  | s/ Paul E. Werner<br>PAUL E. WERNER<br>MD Bar (conditionally admitted, W.D. Wash.) Trial<br>Attorney<br>United States Department of Justice<br>Torts Branch, Civil Division<br>P.O. Box 7146<br>Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 616-4152 (phone)<br>(202) 616-4314 (fax)<br>E-mail: Paul.Werner@usdoj.gov |
|  | Attorneys for Defendant Robert M. Gates and the<br>United States |

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 12

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2011, I electronically filed the foregoing with the Clerk of

Court using the CM/Dkt. system, which will send notification of this filing to:

Gwynne L. Skinner
Willamette University School of Law
Clinical Law Program
245 Winter Street, SE
Salem, OR 97301

Hank Balson
Nancy S. Chupp
Public Interest Law Group, PLLC
705 Second Avenue, Suite 1000
Seattle, WA 98104

/s/ Paul E. Werner
PAUL E. WERNER
MD Bar (conditionally admitted, W.D. Wash.)
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

DEF. GATES'S REPLY IN SUPPORT OF
MOT. TO DISMISS (C10-0591MJP) - 13

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152