The Honorable Judge Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADEL HASSAN HAMAD,

    Plaintiff,

v.

ROBERT M. GATES, in his individual capacity,

    and

UNITED STATES OF AMERICA,

    Defendants.

NO. C10-0591MJP

**NOTICE OF DEFENDANT ROBERT GATES'S MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDMENT CLAIM IN HIS SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

(Note on Motion Calendar for: February 17, 2012)

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Robert M. Gates moves this Court to dismiss Plaintiff's constitutional claim against him because this Court lacks subject matter jurisdiction over Plaintiff's claim, the Court should not infer a damages remedy in the context alleged, and Defendant Gates is entitled to qualified immunity.[1] This motion is based on the accompanying memorandum. A proposed order is attached.

---

[1] This Court already ruled on Defendant's subject-matter jurisdiction and special factors arguments. *See* Dkt. No. 121. Defendant hereby incorporates those defenses by reference solely to preserve them for appeal. *See* Dkt. Nos. 112 at 4-17; 116 at 1-3, 6-11;

DEF. GATES'S SUPP. MOT. TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (C10-0591MJP) - 1

UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

DATED this 20th day of January, 2012.

                                        Respectfully submitted,

| | |
|---|---|
| JENNY A. DURKAN<br>United States Attorney<br>Western District of Washington | TONY WEST<br>Assistant Attorney General, Civil Division<br><br>C. SALVATORE D'ALESSIO, JR.<br>Acting Director, Torts Branch<br><br>ANDREA W. McCARTHY<br>Senior Trial Counsel<br><br>LAURA K. SMITH<br>Trial Attorney<br><br>/s/ Paul E. Werner<br>PAUL E. WERNER<br>MD Bar (conditionally admitted, W.D. Wash.)<br>Trial Attorney<br>United States Department of Justice<br>Torts Branch, Civil Division<br>P.O. Box 7146<br>Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 616-4152 (phone)<br>(202) 616-4314 (fax)<br>E-mail: Paul.Werner@usdoj.gov<br><br>Attorneys for Defendant Robert M. Gates |

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 2

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, a citizen and resident of Sudan, sues twenty-two high-level military and civilian government officials in their individual capacities. He alleges he was mistreated in Afghanistan and Cuba while detained by the United States military, and that Defendants are personally liable for his mistreatment. This Court has dismissed for lack of personal jurisdiction Plaintiff's individual-capacity claims against all Defendants but former Secretary of Defense Gates, and has also dismissed all of Plaintiff's customary international law and Geneva Convention claims. Secretary Gates now seeks dismissal of Plaintiff's constitutional claim on qualified immunity grounds.

**PROCEDURAL BACKGROUND**

Plaintiff alleged that while he was in Pakistan in 2002, Pakistani security forces improperly arrested him under the direction of an "unknown American official," detained him for six months, and then transferred him to the United States military in early 2003. *See* First Amended Complaint (FAC) ¶¶ 58-62. The United States military then detained Plaintiff at Bagram Air Base, Afghanistan, for three months before transferring him to the Naval Station at Guantánamo Bay, Cuba. *See id.* ¶¶ 4, 63. He remained at Guantánamo until he was released to Sudan in 2007. *See id.* ¶¶ 4, 70. Plaintiff claimed that in 2005, a Combatant Status Review Tribunal (CSRT) mistakenly declared him an enemy combatant. *See id.* ¶ 73. He added that in November of that year, an Administrative Review Board approved him for release from Guantánamo, but he was not notified of that approval until February 2007, when the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC) sent his counsel an e-mail to that effect. *See id.* ¶¶ 77-78. Plaintiff brought six claims for alleged violations of customary international law and the Geneva Conventions, *see id.* ¶¶ 110-137, and one claim for the purported violation of his due process rights under the Fifth Amendment. *Id.* ¶ 143.

The United States substituted itself as the sole defendant for Plaintiff's international law and Geneva Convention claims. *See* Dkt. No. 110. Secretary Gates moved to dismiss Plaintiff's constitutional claim on the following grounds: (1) the Military Commissions Act barred that claim; (2) special factors counseled against inferring a remedy in the context presented; and (3) Secretary Gates was entitled to qualified immunity because Plaintiff failed to allege he personally participated in any

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 3

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

clearly established constitutional violation. *See* Dkt. Nos. 112, 116. Concurrently, the United States moved to dismiss Plaintiff's customary international law and Geneva Convention claims against it because (1) Plaintiff failed to exhaust his administrative remedies; (2) sovereign immunity barred his claims; (3) the Military Commissions Act precluded his claims; and (4) venue was improper. *See* Dkt. Nos. 111, 115.

On December 8, 2011, this Court granted both Defendants' motions to dismiss. *See* Dkt. No. 121. The Court held that Plaintiff had failed to allege that former Secretary Gates personally participated in any clearly established constitutional violation, and that Plaintiff's claims against the United States were barred by sovereign immunity. *See id.* at 13-14, 18-20. The Court gave Plaintiff leave to amend his complaint in order to allege that Secretary Gates personally participated in wrongdoing. *Id.* at 20. Plaintiff amended his complaint on January 6, 2012. *See* Dkt. No. 122. Plaintiff's Second Amended Complaint (SAC) contains all the allegations mentioned above, along with additional allegations purporting to show Secretary Gates's personal involvement in the alleged constitutional violations. As with Plaintiff's First Amended Complaint, the Second Amended Complaint fails to allege that Secretary Gates personally participated in any clearly established constitutional violation. Instead, Plaintiff attempts to hold Defendant Gates liable solely based on his position as Secretary of Defense.

**ARGUMENT**

Plaintiff's constitutional claim should be dismissed because Secretary Gates is entitled to qualified immunity. Plaintiff still has not plausibly alleged Secretary Gates personally participated in the purported misconduct giving rise to his constitutional claim. Indeed, Defendant Gates did not become Secretary of Defense until December 2006, *see* SAC ¶ 24, a year after Plaintiff was already allegedly approved for transfer, and Plaintiff was notified of that approval in February 2007. Qualified immunity also requires dismissal for the separate reason that Plaintiff, an alien with no previous contact with the United States who was detained as an "enemy combatant" by the military outside the United States, had no clearly established due process rights at the time of his detention.[2]

---

[2] The United States government no longer uses the term "enemy combatant" in litigation in describing its general detention authority under the Authorization for Use of Military Force, Pub. L. No. 107-40,

(continued...)

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 4

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

The courts have long noted that individual-capacity actions like this one "entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citation omitted). To address those concerns, the Supreme Court established the defense of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Qualified immunity shields officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The Supreme Court has emphasized that in order to ensure that qualified immunity shields officials from the fear of civil damages as well as the harassment of litigation, *Anderson*, 483 U.S. at 638, qualified immunity contains an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted). It is "an *immunity from suit* rather than a mere defense to liability." *Id.* Accordingly, the Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (citations omitted). *See also Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Harlow*, 457 U.S. at 817.

Two components of qualified immunity come into play in this case: first, the need for Plaintiff to sufficiently allege personal involvement in the purported violations on the part of Secretary Gates, and second, the requirement that Plaintiff allege the violation of a clearly established right. In constitutional tort suits, "masters do not answer for the torts of their servants." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001) (*Bivens* remedies "deter individual federal officers from committing constitutional violations," by allowing plaintiffs to recover against those "directly responsible" for violating their rights). For Plaintiff's "due process" claim, SAC ¶¶ 142-47, to survive against Secretary Gates, it must allege facts "plausibly suggesting (not merely consistent with)" violation of a clearly established right of Plaintiff's by

---

[2](...continued)
115 Stat. 224 (2001) (AUMF). *See, e.g.*, *Al-Adahi v. Obama*, 692 F. Supp. 2d 85, 88 (D.D.C. 2010). But at all times relevant to Plaintiff's complaint, that term described Plaintiff's status.

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 5

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

Secretary Gates personally. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see Avalos v. Baca*, 596 F.3d 583, 587 n.3 (9th Cir. 2010) ("[I]ndividual liability . . . arises only upon a showing of personal participation.").

In evaluating a plaintiff's allegations, the Court must ignore "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949, 1950), *cert. denied*, 132 S. Ct. 95 (2011). After eliminating such unsupported legal conclusions, the Court should ask whether Plaintiff has proffered sufficient "well-pleaded factual allegations" against Secretary Gates to "plausibly give rise to an entitlement to relief." *Id.* (quotation marks omitted).

Moreover, qualified immunity is a "fair notice" requirement, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), which is intended to protect government officials from suit unless they are "plainly incompetent or . . . knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Rodis v. City, County of S.F.*, 558 F.3d 964 (9th Cir. 2009) (granting qualified immunity in the § 1983 context). For a right to be clearly established, it must be adequately developed by existing law so as to provide an official with sufficient guidance: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. The illegality of the officer's actions must, in the light of pre-existing law, "be apparent," *id.*, and "beyond debate." *al-Kidd*, 131 S. Ct. at 2083 (citations omitted). This Court should grant qualified immunity to Secretary Gates because Plaintiff has failed to allege that he personally participated in the violation of a clearly established right.

### I. Plaintiff Has Failed To Allege Sufficient Personal Involvement by Secretary Gates.

Plaintiff's complaint still does not show that Secretary Gates was personally involved in any alleged constitutional violation here because Plaintiff's new allegations are either conclusory, irrelevant, or insufficient. Indeed, those allegations merely confirm that Plaintiff names Secretary Gates as a Defendant solely on the basis of his position as Secretary of Defense during the final year of Plaintiff's detention, and not on the basis of his "own misconduct." *Iqbal*, 129 S. Ct. at 1949.

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 6

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

It bears repeating that because Secretary Gates did not assume office until December 2006, he had no involvement in any alleged events preceding that date. By the time Defendant Gates was appointed Secretary of Defense, Guantánamo Bay had been housing suspected terrorists for four years, the CSRT process was firmly in place, and Plaintiff allegedly had already been deemed an "enemy combatant" and subsequently approved for release. Therefore, the only alleged events that occurred *after* Secretary Gates assumed office were (1) an e-mail notification in February 2007 from OARDEC that Plaintiff was approved for release from Guantánamo; (2) the ordering of a second CSRT for Plaintiff in November 2007; (3) the continued detention of Plaintiff at Guantánamo until December 2007; and (4) the release of Plaintiff to Sudan in December 2007.

None of Plaintiff's added allegations connects Secretary Gates to any of these events. Those new allegations consist of the following: (1) statutory authority for the Secretary of Defense's control over the military and a requirement for him to provide policy guidance for certain contingency plans at set intervals, *see* SAC ¶ 25; (2) allegations that Secretary Gates "affirmatively continued policies" of holding detainees, even though he "knew" innocent men were held and that the CSRT process had "significant due process problems," *id.* ¶ 109; (3) allegations that individuals involved in military commissions at Guantánamo Bay voiced concerns about the military commissions and the politicization of "the system at Guantanamo," *id.* ¶ 111-12; (4) allegations that Members of Congress sent a letter to then-President Bush that "indicated" that innocent men were held there, and copied this letter to Secretary Gates, *id.* ¶ 112; and (5) allegations that Secretary Gates was substituted under a procedural rule as a respondent in Plaintiff's habeas petition, in which Plaintiff had previously filed a motion for summary judgment claiming his innocence. *Id.* ¶ 110.

As this list makes clear, *none* of these allegations sheds any light on Secretary Gates's involvement in the e-mail notification to Plaintiff's counsel, the second CSRT ordered for Plaintiff, his continued detention, or his release to Sudan. Each of the above allegations is either conclusory, irrelevant, or insufficient to show personal involvement on the part of Secretary Gates. The first allegation establishing the Secretary of Defense's statutory authority and obligations is meaningless here. It is undisputed that a statute provides for the Secretary of Defense's control over the military and

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 7

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

requires him to periodically provide policy guidance on certain contingency plans, but that statute in no way establishes Secretary Gates's personal involvement. *See Iqbal*, 129 S. Ct at 1949.

The second allegation is conclusory. Plaintiff's claim that Secretary Gates "affirmatively continued" policies he "knew" were problematic is akin to the "bare assertions" in *Iqbal* that the defendants there "knew of, condoned, and willfully and maliciously agreed" to an allegedly unconstitutional detention program. *Iqbal*, 129 S. Ct. at 1951 (quoting *Iqbal* complaint). The Court may not "assume the truth of the complaint's bare legal conclusion[s]" but must "instead consider whether the complaint's well-pleaded facts are sufficient" to support such conclusions. *Telesaurus*, 623 F.3d at 1004-05; *see Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").

What is most telling about the above allegation is not what it contains, but what it does not: Plaintiff does not allege that Secretary Gates signed any memorandum, issued any specific order, or formulated any specific policy regarding detention or status hearings at Guantánamo, unlike the complaint in *Vance v. Rumsfeld*, 694 F. Supp. 2d 957 (N.D. Ill. 2010)—which this Court correctly noted is scheduled for rehearing before the Seventh Circuit. *See* Dkt. No. 121 at 11.

The allegations that relate to officials' comments regarding military commissions at Guantánamo are irrelevant. Plaintiff was never the subject of a military commission. *See* SAC ¶ 10 (alleging Plaintiff was never charged or tried for a crime). Additionally, Plaintiff's assertions that Secretary Gates had "notice of the flawed systems at Guantanamo" because officials voiced concerns regarding military commissions there, *id.* ¶¶ 111-12, are conclusory—not to mention speculative. Regardless, it is unclear what "flawed systems at Guantanamo" refers to. Nor is it clear what the "politiciz[ation]" of "the system at Guantanamo" means or what it has to do with Secretary Gates. *Id.* ¶ 112.

And the letter from Members of Congress was directed to the President, not Secretary Gates. *Id.* ¶ 112. Moreover, the thrust of the letter was that then-President Bush should fulfill his administration's reported plans to close Guantánamo Bay, and mentioned only in passing the alleged "indefinite detention

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 8

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

of innocent men" as one of the reasons Guantánamo should be closed.[3] Furthermore, the letter did not identify Plaintiff or his situation. Lastly, a single letter or media report cannot demonstrate personal involvement. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 978-79 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2074 (2011) (media reports and court ruling detailing harsh conditions of confinement for those held as material witnesses were insufficient to support conditions-of-confinement claim against Attorney General); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement." (collecting cases)).

Similarly, Plaintiff's habeas filing was insufficient to establish personal involvement. First, in the habeas proceeding, Secretary Gates was a respondent in his official capacity only, as Plaintiff himself recognizes. *See* SAC ¶ 110 (alleging that Secretary Gates was automatically substituted under Fed. R. Civ. P. 25(d), which involves official-capacity parties). Therefore, Plaintiff was not required to personally serve Secretary Gates. *See* Fed. R. Civ. P. 4(i)(2). Nor does Plaintiff allege he ever served Secretary Gates with any filings in his habeas proceeding, let alone his motion for summary judgment. Indeed, the United States, through the Department of Justice, defended against Plaintiff's habeas petition—not Secretary Gates personally. *See* 28 U.S.C. § 516. Second, that motion was filed three months *before* Secretary Gates assumed office. *See* SAC ¶ 110. To infer that he was aware of the contents of a motion in a single habeas action filed months before assuming office simply defies common sense. As Secretary of Defense, Defendant Gates oversaw this country's largest employer, the Department of Defense, which currently has 1.4 million active-duty military personnel, another 1.1 million personnel in the National Guard and Reserves, and 718,000 civilian employees.[4] It can fairly be said that he could not possibly have fulfilled his responsibilities and simultaneously kept track of filings

---

[3]*See* Congress letter to Bush: Close Guantanamo, McClatchy, *available at* http://www.mcclatchydc.com/2007/06/29/17486/congress-letter-to-bush-close.html (containing text of June 29, 2007 letter from 145 members of the House of Representatives to Bush asking him to close Guantánamo) (last visited Jan. 9, 2012). Because Plaintiff refers to this letter as a basis for his complaint, it is incorporated by reference and can be discussed in a Rule 12(b)(6) motion to dismiss. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

[4]About the Department of Defense (DOD), http://www.defense.gov/about/ (last visited Jan 9, 2012).

DEF. GATES'S SUPP. MOT. TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (C10-0591MJP) - 9

UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

in multiple habeas petitions by military detainees. Third, even without these responsibilities, it is patently unreasonable to assume that the Secretary of Defense is personally aware of the contents of all papers in all habeas proceedings filed by individuals in military custody—anywhere in the world. Accordingly, this allegation—like all the others—fails to demonstrate Secretary Gates's personal involvement in a constitutional violation.

To reiterate, Plaintiff has failed to provide *any* factual allegations showing how Secretary Gates was connected to detentions at Guantánamo Bay, the CSRT process, or status hearings—never mind *Plaintiff's* detention there—other than his position as Secretary of Defense. Nor has he provided any factual allegations establishing supervisory liability for Secretary Gates. To establish supervisory liability, a plaintiff must show either (1) the supervisor's personal involvement in a constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the violation. *See Edgerly v. City of County of S.F.*, 599 F.3d 946, 961 (9th Cir. 2010) (citations omitted). The causal connection can be shown through the supervisor's own "culpable action or inaction in the training, supervision, or control of subordinates"; his "acquiescence" in a constitutional deprivation; or through conduct that shows "a reckless or callous indifference to the rights of others." *Id.* (citation omitted). Plaintiff's complaint satisfies none of these requirements. As detailed above, the complaint fails to show personal involvement on Secretary Gates's part: it is entirely unclear what role, if any, Secretary Gates played in the decision to detain Plaintiff between December 2006 and December 2007, the decision where to transfer him, and the decision when to transfer him. Nor does the complaint plead facts showing Secretary Gates was causally connected to these decisions—through acquiescence or otherwise.

Indeed, the course of alleged events undermines a finding of "culpable action or inaction," "acquiescence," or "callous indifference to the rights of others" on the part of Secretary Gates. Two months after Defendant Gates's appointment as Secretary of Defense, Plaintiff received notification of his approval for release. A second CSRT was later ordered for him. And then he was released from Guantánamo to Sudan, following "negotiations" between Sudan and this country. SAC ¶ 16. Given this

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 10

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

sequence of events—and the complaint's lack of factual allegations connecting Secretary Gates to any of these events—there simply is no basis to find a claim against him under a supervisory liability theory.

Moreover, to subject Secretary Gates to the burdens of litigation on the basis of Plaintiff's allegations would have severe ramifications for high-level government officials who oversee detention—namely, the Secretary of Defense, the Director of the Federal Bureau of Prisons, the Attorney General, and the Secretary of the Department of Homeland Security. It is easy to imagine that allowing a suit such as this to proceed would result in a blizzard of personal-liability suits—and the attendant discovery and trial burdens—against these officers. Such an outcome would undoubtedly distract these officials from their duties and would dissuade competent individuals from seeking or accepting office. *See Harlow*, 457 U.S. at 814. Qualified immunity is designed precisely to prevent this outcome. *See id.*

At bottom, Plaintiff's complaint against Secretary Gates consists of the following: Plaintiff was innocent and continued to be detained between December 2006 and December 2007; Defendant Gates was the Secretary of Defense at that time; therefore, he is liable. Such a theory of liability has nothing to do with Secretary Gates personally. Instead, it is a suit against him based solely on his position. The Supreme Court has directly addressed this situation: "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S. Ct. at 1949. Accordingly, this Court should dismiss Plaintiff's claim because he fails to allege that Secretary Gates personally committed a constitutional violation against him.

### II. Plaintiff Has Failed To Allege Secretary Gates Violated Any Clearly Established Rights.

Even if this Court finds that Plaintiff has pled sufficient factual allegations against Secretary Gates—which he has not—Secretary Gates is still entitled to qualified immunity. To overcome qualified immunity, a plaintiff must allege facts that if proven would show both that the defendant violated a constitutional right, and that the right was clearly established. Until recently, courts needed to determine first whether a constitutional right had been violated, and then whether the violated right was clearly established at the time of the conduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Now, however, a district court need not determine whether a constitutional right was violated, and instead may simply determine that no clearly established rights were violated. *See Pearson v. Callahan*, 555 U.S. 223, 236

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 11

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1  (2009) (holding that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Indeed, avoiding the constitutional issue is the preferred course where possible, as the Supreme Court recently explained: "our usual adjudicatory rules suggest that a court *should* forebear resolving [the constitutional] issue." *Camreta v. Green*, 131 S. Ct. 2020, 2031 (2011). The Court went on to instruct: "In general, courts should think hard, and then think hard again, before turning small cases into large ones." *Id.* at 2032.

Here, this Court should proceed directly to the clearly established prong of qualified immunity because analysis of that prong is straightforward and will resolve this case. Such an approach is also warranted here because adjudication of complex constitutional issues should only be undertaken where actually necessary to the outcome of litigation. *See al-Kidd*, 131 S. Ct. at 2080 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" (quoting *Pearson*, 555 U.S. at 236-37)); *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring); *see also Pearson*, 555 U.S. at 241-42 (citing the avoidance principle in recognizing that a court ruling on a claim of qualified immunity may decide the case without resolving the constitutional issue).

For those reasons, other courts have repeatedly relied on the clearly established prong of qualified immunity analysis to resolve Fifth Amendment claims brought by aliens detained at Guantánamo Bay. Most notably, the D.C. Circuit, in *Rasul v. Myers*, 512 F.3d 644, 663-65 (D.C. Cir. 2008) ("*Rasul I*"), stated that the Constitution did not confer rights on nonresident aliens detained abroad who had neither property nor presence in the United States. *Id.* at 663-65. On remand after the June 2008 decision in *Boumediene v. Bush*, 553 U.S. 723 (2008), however, the court held that, in light of *Pearson*, it no longer needed to reach the constitutional issue, but rather could simply proceed directly to the second prong of the qualified immunity analysis to hold that aliens detained at Guantánamo Bay had no clearly established due process rights at the time of the alleged acts. *Rasul v. Myers*, 563 F.3d 527, 529-30 (D.C. Cir. 2009) ("*Rasul II*"); *see also Ali v. Rumsfeld*, 649 F.3d 762, 770-73 (D.C. Cir. 2011)

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 12

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1  (proceeding directly to second prong of qualified immunity in affirming dismissal of constitutional
2  claims by aliens detained in Iraq and Afghanistan and noting that the "*Saucier* procedure . . . is not
3  appropriate in most cases"). As in *Rasul II* and *Ali*, there is no need to address the constitutional issue
4  presented in this case.

### A. The Controlling Case Law During the 2003-2007 Period—the Period at Issue in this Case—Did Not Establish that Due Process Rights Extended to Detainees at Guantánamo Bay.

All of Plaintiff's claims accrued during his detention from 2003 until 2007. The controlling case law from the Supreme Court and lower courts applicable during that 2003-2007 period—the period at issue in this case—made clear that aliens outside the United States had no clearly established due process rights. *See, e.g.*, *Boumediene*, 553 U.S. at 770; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) ("[W]e have rejected the claim that aliens are entitled to Fifth Amendment rights outside the sovereign territory of the United States."); *Johnson v. Eisentrager*, 339 U.S. 763, 784-85 (1950) (stating that "no decision in this Court" supported the extension of Fifth Amendment rights to aliens overseas and the "practice of every modern government is opposed to it"). *See also Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) ("The Supreme Court has long held that non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections."); *Al Odah v. United States*, 321 F.3d 1134, 1140-1144 (D.C. Cir. 2003), *rev'd on other grounds sub nom. Rasul v. Bush*, 542 U.S. 466 (2004) (holding that aliens detained extraterritorially did not have substantive due process rights); *32 County Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002) (noting that a foreign entity "without property or presence" in the United States had no due process rights); *Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1428 (11th Cir. 1995) (holding that Cuban and Haitian migrants held at Guantánamo Bay had "no First Amendment or Fifth Amendment rights").

Indeed, the Supreme Court in *Boumediene* remarked that "before today the Court has never held that noncitizens detained by our Government in territory over which another country maintains *de jure*

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 13

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

sovereignty have *any rights* under our Constitution." 553 U.S. at 770 (emphasis added). And as to the rights recognized in *Boumediene*, the Court emphasized that "our opinion does not address the content of the law that governs petitioners' detention. That is a matter yet to be determined." 553 U.S. at 798; *see also Kiyemba v. Obama*, 555 F.3d 1022, 1032 (D.C. Cir. 2009), *vacated and remanded*, 130 S. Ct. 1235, *reinstated*, 605 F.3d 1046 (D.C. Cir. 2010), *cert. denied*, 131 S. Ct. 1631 (2011) ("*Boumediene* . . . specifically limited its holding to the Suspension Clause."). The Court's express recognition that its 2008 holding was novel underscores that any alleged constitutional rights Plaintiff had during his detention could not have been clearly established.

### B. The Lack of Case Law Clearly Establishing Due Process Rights for Alien Detainees at Guantánamo Bay Requires Immediate Dismissal of Plaintiff's Constitutional Claim on Qualified Immunity Grounds.

As stated previously, to overcome Secretary Gates's qualified immunity defense, Plaintiff must allege violations of his constitutional rights that were so clear and indisputable at the time of Secretary Gates's alleged conduct that it must have been "apparent" to him that his actions were unconstitutional. *See Anderson*, 483 U.S. at 640. Plaintiff's constitutional claim in this case does not satisfy that demanding standard. As discussed immediately above, all of Plaintiff's claims accrued during his detention from 2003 until 2007, and the controlling case law from that period does not show that Plaintiff had clearly established due process rights. Moreover, in holding that the Constitution did not entitle aliens ordered released from Guantánamo to enter the United States, the D.C. Circuit has stated since *Boumediene* that due process rights do not extend to aliens detained at Guantánamo Bay. *Kiyemba*, 555 F.3d at 1026 (stating that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States"). We are aware of no case law to the contrary.[5]

---

[5] We reiterate that it is not necessary to adopt the D.C. Circuit's position on the extraterritorial application of constitutional rights in the case at bar. Indeed, in *Kiyemba* itself the United States argued that the case presented "no occasion . . . for the Court to address broad questions concerning the application of the Due Process Clause to detainees at Guantanamo Bay." Resp'ts' Opp'n to Pet'rs' Mot. To Govern and for Remand and Cross-Mot. for Reinstatement of J. at 21, *Kiyemba v. Obama*, 605 F.3d 1046 (D.C. Cir. 2010) (Nos. 08-5424-29), ECF No. 1236032. The point here is that the very existence of the *Kiyemba* opinion, coupled with the holdings in prior case law, reflect the lack of a clearly established right by the Plaintiff in the period 2003-2007, which is the period of his detention.

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 14

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1    Given this, it cannot logically be argued that Plaintiff had clearly established due process rights at
2    Guantánamo Bay in 2007. Indeed, no court since *Boumediene* that has adjudicated a *Bivens* case
3    involving alien detainees held outside the United States has found that the rights allegedly violated were
4    clearly established during the time period at issue. *See Ali*, 649 F.3d at 770 (dismissing claims of aliens
5    detained in Iraq and Afghanistan until 2004 on clearly established grounds); *Rasul II*, 563 F.3d at 532
6    (dismissing claims of aliens detained at Guantánamo Bay until 2004 on clearly established grounds); *Al-
7    Janko v. Gates*, --F. Supp. 2d--, 2011 WL 6440906, at *4 n.13 (D.D.C. Dec. 22, 2011) (dismissing
8    claims of alien detained at Guantánamo Bay until 2009 on clearly established grounds); *Al-Zahrani v.
9    Rumsfeld*, 684 F. Supp. 2d 103, 112 n.5 (D.D.C. 2010) (dismissing claims of aliens detained at
10   Guantánamo Bay until 2006 on clearly established grounds), *appeal docketed*, No. 10-5393 (D.C. Cir.
11   Nov. 29, 2010). Accordingly, Secretary Gates is entitled under the qualified immunity doctrine to
12   immediate dismissal of the constitutional claim asserted against him in this case.

## CONCLUSION

14   This Court should dismiss Plaintiff's claim on qualified immunity grounds. Under the qualified
15   immunity doctrine, Plaintiff's constitutional tort claim fails both because he has not alleged sufficient
16   facts to connect Secretary Gates to the violations he claims he suffered and because he has not stated a
17   clearly established violation of his constitutional rights. For these reasons, this Court should dismiss his
18   claim.

DEF. GATES'S SUPP. MOT. TO DISMISS AND
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF (C10-0591MJP) - 15

UNITED STATES DEPARTMENT OF
JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-4152

1  DATED this 20th day of January, 2012.

2                                              Respectfully submitted,

3  JENNY A. DURKAN                             TONY WEST
   United States Attorney                      Assistant Attorney General, Civil Division
4  Western District of Washington
                                               C. SALVATORE D'ALESSIO, JR.
5                                              Acting Director, Torts Branch

6                                              ANDREA W. McCARTHY
                                               Senior Trial Counsel
7
                                               LAURA K. SMITH
8                                              Trial Attorney

9                                              s/ Paul E. Werner
                                               PAUL E. WERNER
10                                             MD Bar (conditionally admitted, W.D. Wash.)
                                               Trial Attorney
11                                             United States Department of Justice
                                               Torts Branch, Civil Division
12                                             P.O. Box 7146
                                               Ben Franklin Station
13                                             Washington, D.C. 20044
                                               (202) 616-4152 (phone)
14                                             (202) 616-4314 (fax)
                                               E-mail: Paul.Werner@usdoj.gov
15
                                               Attorneys for Defendant Robert M. Gates
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to:

Gwynne L. Skinner
Willamette University School of Law
Clinical Law Program
245 Winter Street, SE
Salem, OR 97301

Hank Balson
Nancy S. Chupp
Public Interest Law Group, PLLC
705 Second Avenue, Suite 1000
Seattle, WA 98104

/s/ Paul E. Werner
PAUL E. WERNER
MD Bar (conditionally admitted, W.D. Wash.)
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

DEF. GATES'S SUPP. MOT. TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (C10-0591MJP) - 17

UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION
P.O. BOX 7146, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
(202) 616-4152